## City of Detroit v. Detroit and Erin Plank Road Company.

*Power of plank road company to change location of gates.*—A plank road company has general power to change the location of its gates, and to erect new ones, unless specially restricted.

*Exclusion of gates from city limits — subsequent extension of limits.*—A plank road company occupying for their purposes a road leading from the city of Detroit, procured an amendment to their charter, by which they were "empowered to extend their road on Gratiot street to Randolph street in the city of Detroit: *provided*, that no toll gate shall be erected or maintained within the limits [of said city by said company." Subsequently the city limits were extended by statute so as to embrace a portion of the original road upon which a gate had before been erected. It was held, that the amendatory act did not restrict the original powers of the company to erect and maintain a gate on any portion of the road then outside the city limits, but only prohibited any gate upon the 'extension of the road which was authorized by the amendatory act.

*Heard April 23d. Decided May 3d.*

Certiorari to the Recorder's Court of Detroit.

Defendants were prosecuted in the Recorder's Court under a city ordinance, for obstructing the Fort Gratiot Road by a toll house and toll gate. The case was tried in the Court below upon the following stipulation, signed by the attorneys for the parties, as the sole evidence.

"The defendant was incorporated by a statute entitled 'An act to incorporate the Detroit and Erin Plank Road

Company,' April 3d, 1848, and published on page 382 of the Session Laws of that year.

" This act, and the other acts referred to hereafter, may be read in evidence, and is made a part of this stipulation as much as though copied entire herein.

" When the above charter was granted the eastern line of the city was along Dequindre street.

" In 1849 the company built their road, and erected a toll gate and house in the street within what is now the tenth ward of the city of Detroit. Said gate and house were removed from their first position to their present position as hereafter stated, in the year 1862.

" In 1851 the Legislature authorized the company to extend their road into the city along Gratiot street to Randolph street, with a proviso that no toll gate should be erected or maintained within the limits of said city. Laws of 1851, p. 35.

" The company extended their road accordingly.

" In 1857 the corporate limits of the city were extended on the east so as to embrace what is now the tenth ward. Laws of 1857, p. 209.

" The company now maintain a gate and house in the street on the Fort Gratiot Road, near the corner of Elmwood Avenue, within the tenth ward.

" Fort Gratiot Road was built by the United States while Michigan was a Territory.

" It is hereby agreed that this case shall be submitted to the Court on the above stated facts, without other evidence.'

The Recorder's Court, on this stipulation, found the defendants not guilty.

*T. H. Hartwell, City Attorney,* and *D. C. Holbrook* for the prosecution:

The plaintiff in error contends, that the act of 1851 cannot, by any fair construction, give the company a right

to maintain a gate within the city limits, as thereafter at any time established; *the then present* intention of the act was to prevent it; and why should it give a right by mere implication to do afterwards what the act then prohibited?

. The inconvenience of a gate was intended to be prevented by the act; and can it be supposed that while the road could not maintain a gate within the then limits, that this prohibition should not operate on a future extension of city limits? as though one part of ·the city should be, and another part not, subject to the inconvenience of a gate, ignoring the probability of a necessary extension of the city limits.

It will be said that because the company was allowed to extend its road into the city, if the prohibition was not annexed, a gate might be maintained under the original act any where within the city. In reply to this we say, it was a part of the contract prospectively that no gate should be erected on the extension of the city lim· its: — *Regina v. Cottle*, 3 *E. L. & Eq.* 474.

*Walker & Kent*, for defendants :

The power of the Legislature to grant to the company the use of the Fort Gratiot road is settled in *McKay v. D. & E. P.·R. Co.*, 2 *Mich.* 138. Under their right to erect toll gates, they may change their gates, or erect new ones, when necessary: — *Cheshire Turnpike v. Stevens*, 10 *N. H.* 133. They can erect toll gates and toll houses in the street:— 2 *W. & S.* 548; 6 *W. & S.* 378.

The right of the company under the original charter, to maintain the toll gate complained of, will not be questioned. The place was then without the city. The mere extension of the city limits could not take away this right. The act amendatory of defendant's charter clearly referred to the city as then limited, and discloses

no intention to restrain the powers given by the original charter. ‚There is no substantive enacting clause which intimates such a purpose; and to say that it was sought to be obtained by a proviso only, is a novel legal proposition. A proviso is *a limitation* of a previous declaration, deed or grant: — 10 *Pet.* 449; 10 *Wheat.* 30. The purpose of the act was clear. The company desired to extend their road into the city. The Legislature was willing to grant that right. But an unqualified grant might seem to carry over the extension the existing incidental franchises of the company. Hence the claim to erect gates on the extension might be set up. This the Legislature did not intend to permit. It was therefore said; "you may extend your road within the city limits, *provided,* you shall not erect and maintain gates within those limits."

CHRISTIANCY J.:

The only question in this case, is, whether the plank road company had the right to erect and maintain a toll gate on the Fort Gratiot road, or Gratiot street, in the tenth ward of the city of Detroit.

By the charter of the company — *Laws of* 1848, *p.* 382 — they were authorized to establish and construct their road "*from* the city of Detroit in the county of Wayne, on the Gratiot road, so called," to, &c. Their right to the use of the Gratiot road for this purpose was affirmed in the case of *McKay v. The Detroit & Erin Plank Road Co.*, 2 *Mich.* 138.

Under the General Plank Road Law of 1848 — *Laws of* 1848, *p.* 65, § 17 — which was made a part of their act of incorporation, the company had power to erect and maintain toll gates; and it is provided that "such toll gates so to be erected by such company may be as many in number, and located at such points, as such company may deem necessary." The general power to change the location of a gate once erected, or to erect new ones,

unless specially restricted, can not be doubted. See *Cheshire Turnpike v. Stevens*, 10 *N. H.* 133.

The road was constructed in 1849, and a toll gate erected within what is now. the tenth ward of the city; and, it would seem, near the place of the present gate; how near does not appear. This ward was not then, nor until 1857, within the city limits; but the corporate limits were then extended by the Legislature, and this ward added to the city. The location of the gate seems to have been changed in 1862, but which way or how far does not appear; nor is it material, as the places of both the former and present gates were outside of the city limits until 1857.

There can be no doubt that, under their original charter, the company had the right to erect and maintain their gate in the place where it was first located, and which was then without the corporate limits of the city. Nor do we· see any more reason to doubt that, under that act, unless altered in this respect by the amendatory act of 1851, they would still have the right to continue the gate, or erect and maintain a new one, at any point on their road, not within the city limits as established at the date of the charter and when the road was constructed, notwithstanding the subsequent extension of the city limits so as' to include the place in question. But their rights terminated at the city line, as then established. They could neither extend their road, nor construct a gate within the city. But in 1851 the company, it would seem, were desirous of obtaining the right to extend their road into the city; and, by an act amendatory of their charter — *Laws of* 1851, *p.* 36, § 2 — the Legislature granted them this power in the following words: "Said Detroit and Erin Plank Road Company may, and they are hereby empowered to extend their road on Gratiot street to Randolph street in the city of Detroit; Provided, that no

toll gate shall be erected or maintained within the limits of said city by said company."

We have not been able to discover in this amendatory act any indication of an intent to restrict or impair any of the powers granted to the company by their original act of incorporation. Its object clearly was to grant to the company powers additional to those it already possessed; and the purpose of the proviso was to restrict or qualify that additional grant of power, and that only. The proviso is no more extensive in its operation, than the power which it qualifies; and both are confined in their operation to that part of the road authorized to be constructed between the city limits, as then established, and Randolph street. The Legislature have merely said to the company, " you may extend your road into the city as far as Randolph street; but, in doing so, you shall not erect or maintain a toll gate upon the portion thus extended." To extend this proviso to the original act, would be to disregard the plain purpose for which the amendatory act was passed, and to change the proviso into a positive and independent enactment.

Had this proviso been inserted in the original charter of the company, as a limitation of their powers, the case might have fallen within one of the principles recognized in *Regina v. Cottle*, 3 *Eng. L. & Eq.* 474. But even then, to bring this within the controlling principle of that case, it should further have been made to appear, not merely that the gate was within the territorial limits of the city corporation, but that the town had been actually built up along that portion of the road; in other words, that the gate was upon the *street* of a *town or city de facto*, where the public inconvenience would be very great, rather than upon a road in the country, where it would be very little. Here it does not appear that there was a house or other building within a mile of the gate.

The judgment of the Recorder's Court must be affirmed, with costs.

The other Justices concurred.