BALFOUR et al. v. HOPKINS et al.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1899.)

1. ESCROW—DELIVERY OF DEED IN VIOLATION OF AGREEMENT—PURCHASER WITH NOTICE OF ESCROW.

A prospective lender of money on a real-estate mortgage, who is advised that the intending borrower is without title, but that a deed conveying the property to him is deposited in escrow, is put upon inquiry as to the terms of the escrow; and if he neglects to ascertain them, when means are within his reach, but accepts the statement of the depositary, and makes the loan, and the deed is delivered by the depositary in violation of the escrow agreement, he cannot claim to be an innocent purchaser, as against the rights of the vendor secured by such agreement, but takes his mortgage subject thereto.

2. ESTOPPEL TO ASSERT RIGHTS UNDER ESCROW AGREEMENT — SUBSEQUENT MORTGAGEE.

A vendor, whose deed, deposited in escrow, together with a mortgage back for purchase money, was delivered by the depositary in violation of the escrow agreement, and who has the right to assert the priority of his

mortgage over another given by the purchaser, and first recorded, is not estopped to insist on such priority by accepting and recording his mortgage, nor by any subsequent acts which in no way prejudiced the rights of the other mortgagee.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

In October, 1892, Charles Hopkins owned lot 7 in block D of A. A. Denny's addition to Seattle. The government meander line ran nearly north and south through the block. Lot 7 was upland, abutting on the shore. Lot 8, and the lots to the westward thereof, which were not platted, but which were called lots 9 and 10, were on submerged or tide lands, outside of the meander lines. The owner of lot 7 had, through an act of the legislature of the state of Washington passed in March, 1890, the preference right to purchase from the state the lots outside of the meander line, as soon as the tide lands should be platted and the harbor lines established. On October 20, 1892, Hopkins entered into a contract with J. Parkinson to exchange his said property for lots 5 and 8 in A. A. Denny's Broadway addition to Seattle, which then belonged to Parkinson. By the agreement the Parkinson property was valued at about $60,000. There was a mortgage outstanding upon it for about $34,000. Later the net value of the Parkinson property was ascertained to be $28,497.85. The Hopkins property was valued at $90,000. Parkinson was to pay Hopkins a balance of $61,502.15. The agreement was delivered to Hopkins, and was withheld from record. By its terms, Parkinson purchased from Hopkins the property aforesaid, describing the same as lots 7 and 8 in block D of A. A. Denny's addition to Seattle, Wash., "together with all the riparian and littoral rights belonging or appertaining thereto, and consisting of lots 9 and 10, adjoining, and extending westward along the north side of Seneca street, across both West street and Railroad avenue, to deep water or ship's channel," for $90,000, to be paid by the conveyance by Parkinson to Hopkins of the Parkinson property at a net value as above stated. For the balance of the $90,000, Parkinson was to make Hopkins deferred payments,—two payments of $12,500 each to be secured by mortgage "on all the lots denominated herein 9 and 10, and all superstructures, consisting of houses, wharves, and warehouses thereon," and the remainder to be secured by a mortgage on the same property, and also by a second mortgage on lots 7 and 8, conveyed by C. Hopkins to Parkinson, "and which are not to be mortgaged by said Parkinson, as a first mortgage, for a greater sum than sixty thousand dollars, which said sum, pursuant to said first mortgage, is to be placed into a brick structure on said lot 7, within one year from and after said 24th day of October, 1892, to cost not less than said sum of sixty thousand dollars when finished." On October 24, 1892, Parkinson and wife conveyed the Parkinson property to Hopkins; and on the following day Hopkins placed the deed on record, and at once took possession of the property, and has since held and owned the same. On November 2, 1892, a deed was executed from Hopkins and wife to Parkinson, conveying to the latter the Hopkins property. Four promissory notes from Parkinson and wife to Hopkins for the deferred payments were signed by Parkinson and wife. A mortgage from Parkinson and wife to Hopkins, as called for in the agreement, was signed, sealed, and acknowledged by Parkinson and wife. A bond running to Hopkins was signed by Parkinson and wife as principals, and by R. R. Spencer and M. D. Ballard, officers of the National Bank of Commerce of Seattle, as sureties, conditioned upon the expenditure of the whole of said sum of $60,000 in the erection of the brick building. An escrow card was signed by Hopkins and wife and Parkinson and wife. The deed, the notes, the mortgage, the bond, and the escrow card were thereupon deposited in the National Bank of Commerce of Seattle, in escrow; and said Spencer, the cashier, wrote upon the escrow card a receipt, which reads as follows: "Received of Roger S. Greene, acting in behalf of the parties signing the escrow card of which the within is a copy, this 3d day of November, A. D. 1892, the instruments specified in said escrow card, to be held by the National Bank of Commerce of Seattle, Washington, as in said escrow card directed, and to be delivered, when and as in said escrow card directed, to the respective parties

entitled thereto, as intended in said escrow card." The escrow card reads as follows:

"This escrow card witnesseth that whereas, as of date 24th of October, 1892, pursuant to a certain memorandum of agreement made and entered into October 20th, 1892, by and between Charles Hopkins and John Parkinson, respectively, providing, among other things, for the sale and conveyance by said Charles Hopkins to said John Parkinson of lots seven (7) and eight (8) in block D of A. A. Denny's addition to Seattle, Washington, the following described instruments have been executed; that is to say: 1st. One deed of conveyance from said Charles Hopkins and wife to said John Parkinson of said lots seven (7) and eight (8). 2nd. Four certain promissory notes executed by said John Parkinson and wife, payable to the order of Charles Hopkins, namely: One for the sum of five thousand five hundred and two and $15/100$ ($5,502.15) dollars, payable twelve months after date; one for twelve thousand five hundred ($12,500.00) dollars, payable on or before ninety (90) days after date; one for twelve thousand five hundred ($12,500) dollars, payable on or before six (6) months after date; and one for thirty-one thousand ($31,000.00) dollars, payable on or before six (6) years after date. 3rd. One bond in the penal sum of seventy-five thousand ($75,000.00) dollars, payable to said Charles Hopkins, his heirs, executors, administrators, or assigns, executed by said John Parkinson and wife and sureties. 4th. One mortgage, providing, among other things, for the mortgaging of said lots seven (7) and eight (8) in block D to said Charles Hopkins, and executed by said John Parkinson and wife. And whereas, in and by said memorandum of agreement it is, among other things, provided, in effect, that the said Parkinson is to place the sum of sixty thousand ($60,000.00) dollars into a brick structure on said lot seven (7); and whereas, said Parkinson is to procure said sixty thousand ($60,000.00) dollars, by loan or loans, from a party or parties in the eastern part of the United States: Now, said instruments are herewith deposited with the National Bank of Commerce of the City of Seattle, Washington, with the following instructions to said bank: Said bank is to retain the custody of said instruments until said sum of sixty thousand ($60,000) dollars shall have arrived from the East, and be under the control of said bank, to the use of said Parkinson, for said brick structure; and, when said sixty thousand ($60,000) dollars is so in possession of, or under the control of, said bank, said bank shall deliver said deed to said John Parkinson, upon his demand therefor, and shall deliver said bond, said promissory notes, and said mortgage to said Charles Hopkins, on his demand therefor.

"Dated at Seattle, Washington, this 2d day of November, 1892.

"Charles Hopkins.
"Lucy S. Hopkins.
"John Parkinson.
"Meta B. Parkinson."

The escrow papers were delivered in an unsealed package. The property which the deed from Hopkins and wife to Parkinson described was as follows: "Lots numbered seven (7) and eight (8) of block D in A. A. Denny's addition to the city of Seattle (being the same premises otherwise known as lots 7 and 8 of block D of that part of the town, now city, of Seattle laid off by A. A. Denny), and all littoral and riparian rights thereunto belonging and appertaining, and all houses, wharves, warehouses, and structures situated and being to the westward of lots seven (7) and eight (8), and extending across West street and Railroad avenue, in said city, to deep water,—subject, however, to all rights of the United States or of the state of Washington west of the government meander line, where the same crosses said premises." The mortgage from Parkinson and wife to Hopkins, which was deposited with the deed in escrow, bore the same date with the deed, and described the property exactly as the same was described in the deed. It reserved permission to the mortgagors to make a prior incumbrance upon a portion of the property, as follows: "And whereas, in and by a certain memorandum of agreement, dated the 20th day of October, 1892, made by and between the said Charles Hopkins and John Parkinson, it was agreed, among other things, in effect, that said John Parkinson might mortgage said lots seven (7) and eight (8), by

first mortgage, for a sum not greater than $60,000, which sum, pursuant to said first mortgage, is to be placed into a brick structure placed on said lot 7 within one year from 'and after this 24th day of October, 1892, to cost not less than said sum of $60,000 when finished: Now, therefore, these presents are intended to be, and the said first parties, their heirs, executors, administrators, and assigns, hereby covenant that these presents shall be, a first mortgage upon the property and premises hereby intended to be mortgaged, except only as against such first mortgage for sixty thousand ($60,000.00) dollars, as is mentioned and intended in said memorandum of agreement; but said first parties shall be at liberty, pursuant to said memorandum of agreement, to place upon said lots seven (7) and eight (8) a first mortgage to secure said sum of sixty thousand ($60,000.00) dollars, and such mortgage shall be a first mortgage, as against these presents."

Shortly after the papers were left in escrow, Parkinson applied to the agents of Balfour, Guthrie & Co., the appellants, for a loan of $60,000. The appellants understood that the security offered them was all of the property which had been purchased from Hopkins. Parkinson testified that he never clearly stated or defined that lots 7 and 8, exclusively, and not any property to the west thereof, should be covered by the mortgage. The appellants instructed their attorney at Seattle to receive an abstract of title which was to be furnished by Parkinson, to make an examination of it, and to prepare a mortgage, which should contain the provision that the preference right to purchase the tide lands from the state should be covered thereby. The attorney found, upon the abstract, that the title rested in Hopkins. He called the attention of Parkinson to that fact, and was informed by him that a deed conveying the property to him, from Hopkins and wife, was in the custody of the National Bank of Commerce, to be delivered whenever the loan should be effected, and $60,000 placed under control of the bank. The attorney went to the bank, repeated to the cashier what Parkinson had said, and inquired if it was correct. He was informed by the cashier that the statement was correct. The attorney then asked leave of the cashier to examine the deed. The deed was produced, and he examined it. Parkinson had informed the attorney that, after the loan was effected, Hopkins was to have a second mortgage upon the property for some unpaid amount of the purchase price. The attorney was not then informed of the existence of any of the papers that had passed between Hopkins and Parkinson, nor of any of the papers in escrow, except the deed. The attorney prepared a mortgage for $60,000. On December 21, 1892. Parkinson and wife executed the notes and mortgage, and acknowledged the latter, and delivered them to the attorney. On the following day, the attorney, being authorized by Parkinson to accept the delivery of the deed, went to the bank, together with the agent of the appellants, and an arrangement was made whereby the sum of $20,000 of the $60,000 was to be deposited in the bank forthwith to the credit of Parkinson; the remainder to remain in the possession of the appellants, subject to draft by the bank, in installments, as the building should progress. The bank then delivered the deed to the attorney, who on the same day filed it for record, and immediately thereafter filed for record the mortgage to the appellants. On December 27, 1892. the appellants paid the bank the sum of $20,000, but paid none of the remainder of said loan until on and after March 28. 1893. Hopkins knew nothing of the mortgage to the appellants, nor of the delivery of the deed, until January 2, 1893. He then went to Parkinson, and accused him of having departed from the agreement, and went to the bank, and accused the cashier of violating the escrow instructions. The same day he demanded and received from the bank the other escrow papers, the four notes, the mortgage, and the bond, and on the following day filed his mortgage for record in the office of the county recorder. On or about January 6, 1893, he sent his attorney to the appellants, to obtain, if possible, a release of the property lying outside of lots 7 and 8, which had been included in their mortgage. Up to this time the appellants had no notice of any of the rights reserved to Hopkins in the agreement, nor of the contents of the escrow card, or of any of the papers that were in escrow, except the deed. On January 7, 1893, the appellants wrote to Hopkins a conditional offer to release the submerged lands lying to 'the westward of lot 8, as soon as the building on lot 7 should be completed, free

from mechanics' and material men's liens, and complete title to lot 8 should be obtained from the state, to which, on January 10, 1893, Hopkins, by his attorney, answered that the proposition had been submitted to Capt. Hopkins, "and, after being duly considered, he thinks it not worth the while to give the same further attention at present; therefore declines the same." The appellants thereafter, in the spring and summer of 1893, proceeded to pay to the bank the remainder of the money due upon the mortgage; and the whole thereof went into the construction of the building, which was completed in September, 1893. In November, 1893, Hopkins obtained from Parkinson a mortgage upon property which the latter owned in the state of Oregon, which was intended as additional security for the debt which Parkinson owed Hopkins. The mortgage recited that its acceptance should not be construed as a recognition of the validity of the appellants' mortgage, and that Hopkins, by accepting it, should not waive his right to contest the validity of the appellants' mortgage. In May, 1894, Hopkins brought suit to foreclose his mortgage upon the property which he had sold to Parkinson. The appellants were not made parties to the suit. On the foreclosure sale the property was purchased by Hopkins, and he thereupon entered into the possession of it. Subsequently Hopkins commenced an action on the bond against Parkinson and wife and the sureties, Spencer and Ballard, alleging that but $30,000 of the $60,000 had been actually expended in the erection of the building on lot 7. After July 12, 1894, Hopkins paid interest to the appellants upon their mortgage, out of the rents collected by him from lots 7 and 8, amounting in all to $5,750. The interest was not promptly paid to the appellants, and they postponed foreclosure of their mortgage, at the request of Hopkins, until the present suit was commenced. The circuit court found and decreed that the lien of Hopkins was prior to that of the appellants upon the property lying to the westward of lot 8, and that the appellants had a first lien, by virtue of their mortgage, upon lots 7 and 8. 84 Fed. 855. From that decree the appellants appeal, contending that their lien is first as to all the property.

Harold Preston, E. M. Carr, and L. C. Gilman, for appellants.

Thomas Burke and Thomas R. Shepard, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The deed which was placed in escrow with the cashier of the Commercial Bank was delivered to the attorney of the appellants in violation of the conditions stipulated in the agreement of the parties. The cashier had in his possession a writing referring expressly to the mortgage, the bond, and the preliminary agreement between Hopkins and Parkinson. The preliminary agreement was not deposited with him, but the mortgage, which was placed in his possession, was sufficient to advise him of the condition upon which he was to deliver the deed. The escrow card, it is true, did not clearly define the condition. It instructed the bank to retain the custody of the deed until Parkinson should procure a loan of $60,000, and place that sum in the bank, subject to its control, and to be used in the construction of a building upon lot 7. By the agreement of the parties, however, the deed was not to be delivered unless Parkinson should procure the loan upon a first mortgage on lots 7 and 8, leaving Hopkins with a first mortgage on the property lying to the westward thereof. That condition was not fulfilled. But it is urged that the appellants stand in the attitude of innocent purchasers; that their attorney had no actual notice of the terms of the agreement, nor of the terms of the mortgage, which was with the papers in escrow, and that his only information was that which

he had received from Parkinson and from Spencer, which was to the effect that the deed was to be delivered whenever a first mortgage for $60,000 should be obtained upon the property described in the deed, and that sum should be placed in the bank; and that the appellants acted in good faith, and without notice of the agreement between Hopkins and Parkinson, and without knowledge that the former was to have a first mortgage upon any portion of the property. The authorities are not in entire harmony as to the effect of the delivery of a deed which has been left in escrow, to be delivered to the grantee upon the performance of a condition, and which has been wrongfully delivered before the condition was performed. The decided weight of authority seems to sustain the view that such a delivery is inoperative to convey title, even in favor of an innocent purchaser without notice, unless the grantor has, by some act or conduct of his own, estopped himself to deny the delivery. The principle on which the doctrine rests is that a deed delivered in violation of the terms on which it has been placed in escrow is not in fact delivered, and that its possession by the grantee is no more effective to convey title than would be the possession of a forged or stolen instrument. Everts v. Agnes, 4 Wis. 343; Berry v. Anderson, 22 Ind. 36; Jackson v. Lynn (Iowa) 62 N. W. 704; Whipple v. Fowler (Neb.) 60 N. W. 15; Smith v. Bank, 32 Vt. 342; Haven v. Kramer, 41 Iowa, 382; Tisher v. Beckwith, 30 Wis. 55.

In Provident Life & Trust Co. of Philadelphia v. Mercer Co., 170 U. S. 593, 604, 18 Sup. Ct. 788, 793, the supreme court distinguished between the case of a bona fide purchaser of negotiable paper which had been wrongfully delivered by a depositary and that of a purchaser of real estate under like conditions, and quoted with approval the language of Chief Justice Bigelow in Fearing v. Clark, 16 Gray, 74, as follows:

"The rule is different in regard to a deed, bond, or other instrument placed in the hands of a third person as an escrow, to be delivered on the happening of a future event or contingency. In that case no title or interest passes until a delivery is made in pursuance of the terms and conditions upon which it was placed in the hands of the party to whom it was intrusted. But the law aims to secure the free and unrestrained circulation of negotiable paper, and to protect the rights of persons taking it bona fide, without notice."

But it is not necessary to determine whether the title passed to Parkinson at the time of the delivery of the deed. When Hopkins placed his own mortgage upon record, he undoubtedly ratified the delivery of the deed, and acknowledged that the legal title to the property had vested in Parkinson. We are unable to agree with the earnest contention of counsel for the appellants that, in admitting the legal title to be in Parkinson, he admitted the priority of their mortgage over all the property. When he found that the deed had been delivered, and that a mortgage had been placed of record which violated the rights that had been reserved to him, it is evident that, by placing his mortgage of record, he sought only to protect his own interests, and to give notice of his rights. It does not follow that, by ratifying the delivery of the deed, he ratified the inequitable use which Parkinson had made of the title which he thereby acquired. He gave immediate and positive no-

tice to the contrary. The utmost that the appellants can predicate upon his ratification of the delivery of the deed is that he acknowledged the validity of their mortgage to the extent only that Parkinson was authorized to incumber the property. The whole case therefore resolves itself into a question of what were the rights, if any, which the appellants acquired as innocent purchasers. To constitute a bona fide purchaser, there must be want of notice, both at the time of the purchase and at the time of the actual payment of the purchase price. Notice before payment is equivalent to notice before the contract, even though the unpaid balance is secured. Blanchard v. Tyler, 12 Mich. 338; Brown v. Welch, 18 Ill. 342; Kohl v. Lynn, 34 Mich. 360; Lewis v. Phillips, 17 Ind. 108; Boone v. Chiles, 10 Pet. 211; Everts v. Agnes, 4 Wis. 343. At the time when the appellants received notice in this case, they had paid but $20,000 of the $60,000 which they had contracted to advance upon the mortgage. The $20,000 so paid still remained in the bank, from which it was to be disbursed in the erection of the building. The appellants undoubtedly had the right, at this point, to rescind the contract; for both Parkinson and the bank had violated the escrow agreement, and Parkinson had executed a mortgage upon property which he had no right to incumber. Instead of rescinding, the appellants chose to pay the bank the remainder of the loan. This they did with full knowledge of the facts. By electing to proceed and pay over the remainder of the money, they must be deemed to have assented that their mortgage should stand as a lien upon the property only which Parkinson could rightfully mortgage to them under his agreement. It may be conceded that, if they were innocent purchasers to the extent of the $20,000 which they had paid before notice of the rights of Hopkins, they had the right, while declining to make further payments on the mortgage, to hold the mortgage itself as security pro tanto for the amount already paid, provided that sum had been paid beyond their power to recall it. But it is not shown that the bank, which held the money, and had given a bond for its disbursement for a specified purpose, declined to surrender the money to the appellants, or that it was requested to do so. No ground is perceived upon which the bank could have resisted such a demand, since the money which it held had been obtained in violation of the escrow agreement of which it was the depositary. The burden of proving all the facts necessary to constitute themselves innocent purchasers rested upon the appellants. Not only have they failed to show that they could not have rescinded the loan, and recovered the $20,000 so paid to the bank, but the evidence in the record is insufficient to convince us that they were in fact innocent purchasers, even to the extent of said sum so paid to account upon the loan. In entering into the contract of loan, as it is disclosed in the record, the appellants were not in the attitude of dealing with one whom they found apparently clothed with the muniments of title. They had notice that Parkinson had no title. They found a deed which was in the possession of neither the grantor nor the grantee, but in the hands of a depositary. They knew that the

depositary was bound to deliver the deed only upon the performance of a condition, and that he was equally bound to withhold its delivery until performance. The depositary was the agent of the grantor, but he was also the agent of the grantee. His authority, so far as he represented either, was not like the authority of a general agent. His agency was special, and for a single act. In procuring the delivery of a deed so held by him in escrow, the appellants were bound to know whether or not the conditions on which its delivery depended had been met. It was not sufficient that they were ignorant of the rights of the grantor, or that no special fact or circumstance came directly to their notice to suggest his rights. It was not sufficient that the depositary voluntarily surrendered the deed, or stated that the terms of the escrow had been fulfilled. The circumstance that the deed was in escrow was of itself sufficient to require them to ascertain the facts. Their attorney had been informed by Parkinson that his trade with Hopkins was conditioned upon his borrowing $60,000 upon the security of a first mortgage upon the property. He did not inquire of the bank upon what terms the deed was held in escrow. He did not see the escrow card, nor ascertain if the instructions were in writing. He had notice, however, from Parkinson's statement to him that Hopkins had not been paid the purchase price of his property, and that a mortgage was to be given to secure it. He had no right to rely upon Parkinson's statement of the terms of the escrow agreement. The facts which came to his knowledge were sufficient to put him upon inquiry. If he had read the escrow card, he would have been advised by its terms that a preliminary agreement had been executed, and that a mortgage from Parkinson to Hopkins was among the escrow papers. From the mortgage he would have discovered that the deed could not be delivered unless the grantee borrowed the $60,000 without incumbering lots 9 and 10 with a first lien. In loaning money upon the whole property without further inquiry, the appellants acted at their peril.

The appellants point to various acts and conduct on the part of Hopkins which they contend establish against him an estoppel to deny that their lien is first upon lots 9 and 10, and amount to a ratification upon his part of their mortgage in all its terms. These are the fact that Hopkins received the bond of the bank, conditioned upon the disbursement of the money in the construction of the building upon lot 7, and subsequently sued the bank upon the bond, alleging that not more than $30,000 of the $60,000 loan had been thus used; the fact that he wrote the letter of January 10, 1893; the fact that he foreclosed his mortgage, and bought in all of the property which he had sold to Parkinson, in a foreclosure suit to which the appellants were not made parties; and the fact that he demanded of, and received from, Parkinson additional security upon property in Oregon for the unpaid balance of the purchase price which Parkinson owed him. All of these circumstances, except the delivery of the bond to Hopkins, and the letter of January 10, 1893, occurred after the appellants had parted with

the full amount of the $60,000 loan. It is not shown that in pursuance of, or relying upon, any or all of said acts, the appellants changed their relation to the transaction, or that they have thereby been placed in any different position from that in which they would otherwise have been. The letter of January 10, 1893, rejecting their proposition, and declining to give the matter "further attention at present," was not inconsistent with an intention upon the part of Hopkins to rely upon his rights as he understood the same to be then defined and fixed by the antecedent facts; nor was it inconsistent with his present contention, that their mortgage upon lots 9 and 10 was, in equity, postponed to his. The fact that he demanded and obtained of Parkinson further security in no way affected their rights, nor were they injured by his foreclosure of his mortgage; nor can the fact that he failed to make them parties to his foreclosure suit, or that he paid interest upon their mortgage, or that he requested them to delay the commencement of their foreclosure suit, be construed to be a ratification of their mortgage, or an admission of the priority of their lien. He held a lien second to theirs upon a portion of the property, and claimed a prior lien upon the remainder. While so asserting his claim, he waived none of his rights by paying the appellants the interest on their mortgage, or by requesting them to delay their foreclosure, or by any other act of which the record advises us. We find no error for which the decree should be reversed. It is therefore affirmed