### JONES v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1913.)

No. 1,965.

**1. CONTEMPT (§§ 40, 60*)—CIVIL OR CRIMINAL CONTEMPT.**

A contempt proceeding, entitled as such and instituted in the name of the United States to punish a proposed surety on the bond of a person accused of crime, for alleged perjury in attempting to qualify, is criminal in its nature, entitling accused to all the presumptions which obtain in a criminal prosecution, including the presumption that he is innocent until his guilt has been established beyond a reasonable doubt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 122–124, 183–187; Dec. Dig. §§ 40, 60.*

Civil and criminal contempts distinguished, see note to Merchants' Stock & Grain Co. v. Board of Trade of City of Chicago, 120 C. C. A. 593.]

**2. CONTEMPT (§ 60*)—PERJURY—OWNERSHIP OF LAND.**

Where, in a prosecution of a proposed surety on a bail bond for contempt in testifying that he was the owner of the fee of certain real property, it was shown that after he had acquired title to the property, and before he offered himself as surety on the bond, he had executed a deed of the property to his wife, but with the understanding that it should only

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be delivered and recorded in case he predeceased her, such deed did not vest in her any interest in the property, and its existence and the fact that she was able to produce it when she was sent home without her husband to get it did not establish beyond a reasonable doubt that accused had testified falsely in stating that he was the owner of the property.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 183–187; Dec. Dig. § 60.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; Kenesaw M. Landis, Judge.

Albert Charles Jones was convicted of contempt of court in committing alleged perjury on his examination to qualify himself as surety on the bail bond of one Johnson, and he brings error. Reversed, with directions to discharge.

This matter is before us on writ of error based upon the judgment of the District Court committing plaintiff in error, hereinafter termed "respondent," to prison for alleged contempt of court, in that he tendered himself on November 8, 1912, to said court as a surety upon the bail bond of one Johnson, who was before said court under indictment, and represented to the court under oath that he was the owner in fee of premises known as No. 2969 Michigan avenue, Chicago, Ill.

From the record it appears that on August 24, 1912, one Mary Meyer, who four days thereafter became the wife of respondent, deeded to him said real estate, which was, approximately, of the value at which it was scheduled, for considerations which are not clearly set out but some of which were valuable. This deed was duly recorded on August 28, 1912. During the examination to which respondent was subjected at the time he tendered himself as a surety, he disclosed to the court, somewhat reluctantly and under the pressure of rigid inquiry, that on the day he recorded his deed to said premises he executed a deed back to his said wife. Just what was to be done as to the custody of this deed he does not clearly remember, but does testify that it was to be delivered to her only in the event of his death, in order to prevent any interest therein vesting in his child by a former marriage. In this he is corroborated by his said wife and by Levering, the lawyer who prepared both deeds and acted as attorney for both parties in regard to their said transactions. The latter remembers little concerning the understanding had at the time as to what immediate disposition was to be made of the deed, but testified unqualifiedly that it was not to be placed of record during the grantor's lifetime. He supposes it was taken away with the rest of the papers. Respondent testifies that he supposed his lawyer would keep it. It was never recorded. Just what was done with it does not appear, except that, when the District Court had ordered respondent into the jury room after hearing his testimony for the purpose of investigating whether the same were true or false, he directed the court bailiff to accompany Mrs. Jones to their home and bring the deed back to the court. This was done, and the deed impounded. The bailiff testified that he remained downstairs in the premises, while Mrs. Jones went upstairs and then came down and delivered the deed to him. He knew nothing of the circumstances under which she obtained it. All of the foregoing proceedings were had and entitled in the matter of Johnson's application for release on bail. Respondent, having been sent to and directed to remain in the jury room, at the close of his testimony as above stated, was not present in court during said subsequent proceedings in re said Johnson's bond. Thereupon on said 8th day of November, 1912, the District Court entered an order based upon the testimony adduced in re said Johnson's application for release on bail aforesaid, finding that respondent had testified falsely in deposing before the court that he was the owner in fee of said premises and that the same were free from all incumbrance; that he had, by the name of A. Charles Jones, executed and delivered a warranty deed to said

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

premises to Mary M. Jones on August 28, 1912, which deed was in her possession and produced in open court; that respondent had committed perjury and, by reason of his said attempt to impose on the court, did willfully and maliciously attempt to obstruct and impede the due administration of justice in said court, and ruled that he show cause by a day named before said court why he should not be punished for contempt; and that, pending further hearing, he be held under bond in the penal sum of $10,000. Thereupon, and on November 8, 1912, respondent was committed to jail in default of bond.

For answer to said rule, respondent charged that the court was without jurisdiction to try or punish him because no sworn complaint had been filed advising him of what he was charged with; that he had been excluded from the courtroom at the time testimony was taken as to his qualification as surety; that no copy of said testimony was filed in the present cause; that the said contempt order was based upon the testimony of his wife and his attorney, neither of whom should have been permitted to give evidence against him. For further answer respondent stated under oath that he was the owner of the premises in question when he so deposed in court and that his testimony in that behalf was not false; that he gave his present wife valuable consideration for said conveyance to him, and that the same was a bona fide conveyance to him, and that his deed back to his said wife was not to be recorded or take effect until after his death; that said deed had never been recorded; that at the time he deposed as aforesaid he had been advised by his lawyer, and believed, and still believes, himself to be the owner of said lot and house, and that his attorney, Levering, took said deed, as he supposed, in escrow, and that he was of that mind at the time he so attempted to qualify as bondsman. A hearing was had upon said rule on November 14, 1912, at which witnesses were examined. At the close of the evidence, respondent by counsel moved the court for discharge from said rule because it was entered without the filing of a complaint or information, and for the further reason that the testimony was incompetent and was taken in his absence; also, because perjury was punishable by indictment and not as for contempt of court, and also because of his sworn answer and because the evidence did not show respondent to be guilty as charged, beyond a reasonable doubt. All of which motions were overruled by the District Court, and respondent, having been adjudged to have failed to show cause, was adjudged to be guilty of contempt and ordered to be confined in the jail of Will county, Ill., at Joliet, for a term of 12 months.

For error respondent assigns:

(1) That no sworn complaint was filed informing him of what he was charged with.

(2) That the rule to show cause was based upon testimony taken while he was excluded from the courtroom.

(3) That said order was based upon the testimony of his wife.

(4) That the court held that perjury constituted contempt.

(5) That the evidence did not sustain the charge of perjury.

(6) That counsel of respondent was permitted to testify.

David K. Tone, of Chicago, Ill., for plaintiff in error.
James H. Wilkerson, U. S. Atty., of Chicago, Ill.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] Under the authorities, the present contempt proceeding, having been entitled as such and brought here on writ of error and being entirely punitive in its character, is criminal in its nature, and respondent was clothed with the presumptions that obtain in a criminal prosecution. He was presumed innocent until that presumption was overcome and his guilt established beyond a reasonable doubt. Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34

L. R. A. (N. S.) 874; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746.

In Coffin v. United States, 156 U. S. 459, 15 Sup. Ct. 404, 39 L. Ed. 481, the court says:

"Now the presumption of innocence is a conclusion drawn by the law in favor of the citizen, by virtue whereof, when brought to trial upon a criminal charge, he must be acquitted, unless 'he is proven to be guilty. In other words, this presumption is an instrument of proof created by the law in favor of one accused, where by his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created."

This case was followed in Dalton v. United States, 154 Fed. 461, 83 C. C. A. 317, by this court. In Garrigan v. United States, 163 Fed. 16, 89 C. C. A. 494, 23 L. R. A. (N. S.) 1295, this court again approved the rule and applied it to a proceeding to enforce a criminal contempt and held that the mere inference of full knowledge based upon the facts of that case was not sufficient to overcome the express denial of the accused, fortified by the presumption as defined in Coffin v. United States, supra.

With this presumption—an active instrument of proof created by the law in his favor, on the one hand, and his sworn denial of the crime of perjury, or attempt to impose upon the court, on the other, both standing guard over his liberty—can it be said that, upon the merits, respondent was proven guilty beyond a reasonable doubt of the charge laid and found against him by the District Court?

[2] Under the laws of the state of Illinois, no lien attaches to lands scheduled by one offering himself as a surety upon a bail bond. Thus it may happen, and, as a matter of common knowledge, often has happened, that the surety disposes of his holdings in order to escape liability as such, in which case there is no protection whenever the purchaser can show good faith. In the present case, so far as the validity of the bond in question was concerned, Jones was the owner of the land in question at the time when he tendered himself as surety. The evidence is clear to the effect that the deed to the wife was not to be delivered or recorded during the husband's lifetime. There is nothing in the record to show that there had been any delivery to the wife to make it effective as a present conveyance. Where it was intended that a deed should remain in escrow, in such a case as this, it was held in County of Calhoun v. American Emigrant Co., 93 U. S. 124, 23 L. Ed. 826, that delivery prior to the happening of the event upon which delivery depended would not vest title in the grantee. In Fearing v. Clark, 16 Gray (Mass.) 74, 77 Am. Dec. 394, it is said:

"The rule is different in regard to a deed, bond, or other instrument placed in the hands of a third person as an escrow, to be delivered on the happening of a future event or contingency. In that case, no title or interest passes until a delivery is made in pursuance of the terms and conditions upon which it was placed in the hands of the party to whom it was intrusted."

This statement of the law was approved in Provident Life & Trust Co. v. Mercer County, 170 U. S. 604, 18 Sup. Ct. 793, 42 L. Ed. 1156. "The principle upon which the doctrine rests," says the United States Circuit Court of Appeals for the Ninth Circuit in Balfour et al. v.

Hopkins et al., 93 Fed. 569, 35 C. C. A. 449, "is that a deed delivered in violation of the terms on which it has been placed in escrow is not in fact delivered, and that its possession by the grantee is no more effective to convey title than would be the possession of a forged or stolen instrument."

It is said in Hollenbeck v. Hollenbeck, 185 Ill. 101, 57 N. E. 36, that:

"The mere placing of a deed in the hands of the grantee does not conclusively establish a delivery thereof, within the legal meaning of that word. Delivery is a question of intent, and depends upon 'whether the parties at the time meant it to be a delivery to take effect at once' "—citing Jordan v. Davis, 108 Ill. 336.

To the same effect are Wilson v. Wilson, 158 Ill. 567, 41 N. E. 1007, 49 Am. St. Rep. 176, and Elliott v. Murray, 225 Ill. 107, 80 N. E. 77.

In the present case it appears that respondent either hesitated to disclose the fact of the deed back to his wife as above stated, or was advised by counsel, and believed that that transaction, modified by the agreement not to record the deed, did not affect his title to the premises in question for the purpose of qualifying upon Johnson's bail bond.

We find nothing in the record justifying the judgment of the District Court unless it be inferences based upon respondent's failure to disclose, at the earliest opportunity, the facts attending the transfers of said lot as aforesaid. There is nothing inconsistent with an honest intention on respondent's part to furnish ample security on said bond. As in Garrigan v. United States, supra, mere inferences derived from the facts of that case were held to be without force to overcome the presumption of innocence and the accused's sworn answer, so here, even weaker inferences cannot be held to furnish a basis for the exercise of this extraordinary power of the court. The findings of fact of the District Court when predicated upon evidence tending to support them will not be lightly disregarded. Here, however, the record entirely fails to support the findings and judgment.

In view of the foregoing, we deem it unnecessary to discuss the other errors assigned. The judgment of the District Court is reversed, with direction to vacate the same and discharge respondent from said rule.