## CHARLES McGINN v. THOMAS J. TOBEY (SURVIVOR) AND THOMAS J. NAVIN.

*Deed—Executed by grantor under honest belief that it was a duplicate of a lease he had just signed of a portion of the premises conveyed—After it had been read to and by him—Is in law a forgery—Mortgagees of such a grantee—Who rely upon an abstract of title, without examining such deed—The date of which is written over an erasure, and is some weeks later than that of the lease—The grantor, at the time mortgage was taken, being in possession of a portion of the premises so conveyed not covered by said lease—Do not occupy position of holders in good faith of commercial paper—They were bound to examine the deed—And take notice of the possession of grantor—And of his rights in the premises—His negligence in signing the supposed duplicate without reading it cannot be considered—The deed being in law a forgery, question of good faith not involved.*

1. Where a party executed a *lease*, which had been read to and by him,

[1] See *Post v. Village of Sparta*, 58 Mich. 212; *Potter v. Village of Homer*, 59 Id. 8.

and a supposed duplicate, which lay on the table by the paper so signed, being of about the same size and general appearance, he having full confidence in the honesty of the lessee, who had prepared the papers, and who stood high in the community, being mayor of the city where he resided; and it afterwards appeared that the supposed duplicate was really a *deed* of the *leased* premises and of a *farm* owned by the lessor, the date of said deed having been written over an *erasure*, and being several weeks *later* than the *real* execution of the papers:—

*Held*, that the deed was a forgery, under the best definitions of that offense; that, although the *signature* was *genuine*, the *body* of the deed was *false*, and the signing of the grantor's name, without knowledge of such falsity, cannot cure it and make it a *true* and *valid* instrument in the hands of *any one*.

2. A person who relies upon the records for the *authenticity* and *validity* of a deed does not stand in as favorable a position as a *good-faith* holder of *negotiable* paper.

So *held*, where parties took a mortgage from the grantee in a deed, which the grantor executed supposing it to be a duplicate of a lease of a portion of the premises conveyed, which lease had been read to and by him prior to its execution, after which he signed the supposed duplicate, which proved to be a deed of the leased premises and of a farm owned by the grantor, of which farm he was in possession by a tenant at the time said mortgage was taken; it further appearing that the *date* of the deed was written over an *erasure*, and was some weeks later than the signing of the lease.

*Held*, further, that in order to make such parties *bona fide* holders of the mortgage they were bound to go beyond the *abstract* and examine the *deed*, when the alteration in the date would have appeared.[1]

*Held*, further, that the question of the grantor's negligence in signing the supposed duplicate without reading it cannot be considered; that, the deed being *in law* a *forgery*, the question of *good faith* cannot arise.

Appeal from Lenawee. (Howell, J.)    Argued June 22, 1886.    Decided July 1, 1886.

Bill filed to set aside a deed and mortgage. Complainant appeals. Decree below reversed, and one entered granting relief prayed for. The facts are stated in the opinion.

*Millard, Weaver & Weaver,* for complainant:

A forged deed can pass no title, even to an innocent party:

---

[1] As to materiality of alterations in written instrument, see 60 Mich. 432; presumption of law as to time when made, Id. 210.

*D' Wolf v. Haydn*, 24 Ill. 525 ; *Austin v. Dean*, 40 Mich. 386 ; *Camp v. Carpenter*, 52 Id. 375.

There is a radical distinction, as regards the *bona fide* purchaser or incumbrancer, between a *void* and *voidable* instrument. In case of *voidable* deeds, the *bona fide* assignee or purchaser stands in a better situation than the perpetrator of the fraud ; but not so if the instrument is void : *Smith v. South Royalton Bank*, 32 Vt. 341, 352–3 ; *Berry v. Anderson*, 22 Ind. 36.

An undelivered deed is void, not voidable, and a *bona fide* purchaser from the person holding such deed stands in his shoes, however the rule may be in regard to commercial paper : *Van Amringe v. Morton*, 4 Whart. 382; *Price v. Junkin*, 4 Watts, 85.

Delivery must be made by word or act with intent thereby to give effect to the deed : 2 Wash. Real Prop. 578.

Complainant did not intend to sign the deed in question ; his mind did not go with the act, and in contemplation of law he never did sign the instrument : *Foster v. Mackinnon*, 38 L. J. Rep. (N. S.) 310 ; *Gibbs v. Linabury*, 22 Mich. 486–9 ; 1 Story's Eq. Juris. (2d ed.) § 222.

A deed so obtained is void as against the party defrauded : *Jackson v. Summerville*, 13 Penn. St. 359.

Even as to negotiable paper, fraud may render it void : *Griffiths v. Kellogg*, 39 Wis. 290 ; and only gross negligence will shut out this defense : *Anderson v. Walter*, 34 Mich. 113 ; *Soper v. Peck*, 51 Id. 563.

As to other contracts, the general rule is that the assignee or purchaser takes subject to all equities, and acquires no better title than the assignor had : *Smith v. South Royalton Bank*, 32 Vt. 341 ; *Mechanics' Bank v. N. Y. & N. H. R. R. Co.*, 3 Kernan (N. Y.), 598, 622–8.

The same rule applies to a deed rendered void by alteration : *Arrison v. Harmstead*, 2 Penn. St. 191–5.

Forgery may be committed by deceitfully obtaining the signature of a party to an instrument of which he had no knowledge, and which he had no intention of signing : *State v. Shurtliff*, 18 Maine, 368.

The misrepresentations which constitute fraud may as well be by deeds or acts as words ; by artifices to mislead as well as by positive assurances : 1 Story's Eq. Jur. (2d ed.) § 192.

Obtaining property, or a signature to a deed, by false pretenses, is a felony by our statutes : How. Stat. § 9161.

Even if obtaining this deed in the manner shown was not a technical forgery, it was not his deed, and, in an action

upon the covenants, *non est factum* might be pleaded and the plea sustained: *Schuylkill v. Copley*, 67 Penn. St. 386 ; *Nicholls v. Holmes*, 1 Jones (N. C.), L. 360 ; *Canoy v. Troutman*, 7 Ired. (N. C.) L. 155.

Defendants were negligent in taking the mortgage without inquiry of complainant, he being in possession of the farm through a tenant. This was notice to the world of his rights: *McKee v. Wilcox*, 11 Mich. 358.

*Bean & Underwood* and *C. R. Miller*, for defendants:

A party cannot set up his own reckless and careless conduct to shield himself from loss, at the expense of others who have invested their money relying thereon after taking every precaution that careful, prudent business men would take. This is a familiar rule of equity jurisprudence, and is enforced at law by way of estoppel: 1 Story's Eq. Jur. §§ 105, 387 ; *Somes v. Brewer*, 2 Pick. 184 ; *Fletcher v. Peck*, 6 Cranch, 87 ; *Brant v. Virginia Coal & Iron Co.*, 93 U. S. 336 ; *Abbott v. Rose*, 62 Me. 194 ; *Trigg v. Taylor*, 27 Mo. 245 ; *Chapman v. Rose*, 56 N. Y. 137 ; *Putnam v. Sullivan*, 4 Mass. 45 ; *Caulkins v. Whisler*, 29 Ia. 495 ; *Douglass v. Matting*, Id. 498 ; *Citizens' National Bank v. Smith*, 55 N. H. 593 ; *Garrard v. Haddan*, 67 Penn. St. 82 ; *Brown v. Reed*, 79 Id. 370 ; *Penn. R. R. Co. v. Shay*, 82 Id. 198 ; *Montgomery v. Scott*, 30 Am. Rep. 1 ; *Greenfield's Estate*, 14 Penn. St. 496.

The cases claimed to have a bearing upon this question in this Court we cite as follows: *Durfee v. McClurg*, 6 Mich. 223 ; *Burson v. Huntington*, 21 Id. 415, 435–6 ; *Stewart v. Milliken*, 30 Id. 503 ; *Smith v. Osborn*, 33 Id. 410 ; *Anderson v. Walter*, 34 Id. 113 ; *Soper v. Peck*, 51 Id. 563 ; *Camp v. Carpenter*, 52 Id. 375.

As to what amounts to negligence, see *Montgomery v. Scott*, 30 Am. Rep. 1 ; *Roach v. Karr*, 18 Kan. 529 ; *Penn. R. R. Co. v. Shay*, 82 Penn. St. 198; *Peake v. Thomas*, 39 Mich. 584.

One who will not read or require to be read to him the contract he makes must be bound, as between himself and a claimant in good faith under it, by the words of the contract: *Taylor v. Atchison*, 54 Ill. 196 ; *Upton v. Tribilcock*, 91 U. S. 50 ; *Lies v. Stub*, 6 Watts, 48 ; *Stapylton v. Scott*, 13 Ves. 427.

The only evidence of any alteration is in the appearance of the paper itself, which does not show it *not* to have been made *before* execution ; and the law, in the absence of *such*

evidence, presumes the contrary : *Munroe v. Eastman*, 31 Mich. 283 ; 2 Cooley's Bl. Com. 308 (note, and cases cited).

An immaterial alteration will not affect the validity of the instrument : 2 Pars. on Cont. (5th ed.) 720 ; *Chessman v. Whittemore*, 23 Pick. 231.

Date of a deed is unimportant : *Thomas v. Thomas*, 10 Ired. 123 ; *Munroe v. Eastman*, 31 Mich. 283.

The alteration of an *executed* instrument will not affect the title conveyed by it, although invalidating the paper so that an action cannot be maintained on its *covenants*. A grantee may thus deprive himself of such remedy but retain the *right* to hold the property conveyed : *Chessman v. Whittemore*, 23 Pick. 231.

MORSE, J.  The bill of complaint in this cause was filed to set aside a deed purporting to have been executed by complainant to Thomas J. Navin, of certain premises in the county of Lenawee, being a lot and store building thereon, in the city of Adrian, and a farm in the township of Hudson ; and also to release a mortgage upon the same premises, executed by said Navin to Sylvester B. Smith and Thomas J. Tobey while he held the apparent record title to said premises, and to have the same decreed and declared to have no force or validity as a mortgage lien upon the lands.

Sylvester B. Smith and Thomas J. Tobey were copartners in the banking business at the time the mortgage was taken, and Smith was made a defendant to the bill. During the taking of proofs he died, and the suit proceeds against Tobey as survivor.

At the time of the execution of this deed the defendant Navin was a member of the law firm of Merritt & Navin, in Adrian, and mayor of that city. He had the confidence and respect of all classes, and was very popular. The complainant, a man about 60 years of age, intrusted some of his business to Navin, and had implicit faith in his honesty and professed friendship.

The proofs show that in the spring of 1881 Navin negotiated with complainant for the rent of his store, and a bargain was entered into between them by which Navin was to lease the store for three years at the rate of $450 per year,

payable in monthly installments. Navin was to draw the lease in duplicate, each party to hold a copy.

On the thirtieth of April, Navin informed complainant that he had the papers drawn, and McGinn went to his office to execute the lease. The copy which complainant took away was read to him by Navin, and he also read it himself, and, after the suggestion of some little change in the instrument, which was made, he signed it. The apparent duplicate lay upon the table, but was not read to or by McGinn. After he signed his copy he signed the other, supposing it to be an exact counterpart of his own, and left it in Navin's possession.

At the time McGinn was in the office to execute the lease Navin did not say to him that the other paper was a copy; but he laid the two documents together upon the table for McGinn to sign, and complainant supposed it to be a copy from the previous talk that two copies, one for each, were to be made. The paper signed and left was upon a blank of about the same character and size of the lease, and partly printed and written, as was his copy. Navin paid the rent regularly, monthly in advance, up to February 1, 1882.

About six months after the execution of the lease Navin told complainant that he had lost his copy, and wanted his to make out another one for himself. Complainant let him have it, but he did not return it, and afterwards, when rent was paid, Navin would take the lease from his safe, and Mc-Ginn would make the indorsement upon it, and hand it back to Navin, who would return it to the safe.

Some time in February, 1882, Navin became involved in numerous forgeries and criminal speculations, and fled the country. It was then soon discovered that he had put upon record a deed from McGinn to him of the store, lot, and the farm, dated June 2, 1881, the words "June 2nd" being written over an erasure.

September 29, 1881, Navin executed to Smith & Tobey a mortgage upon the premises described in the deed, which, upon its face, purported to be given as security for the payment of a certain promissory note for $6,000, payable one

year from date, with interest at 8 per cent., but in reality executed, as the testimony shows, as collateral security for advances made, and to be made, by the bank of Smith & Tobey to Navin; they holding, at the same time, other collateral security for the same purpose.

All the time from the execution of the lease to the flight of Navin, McGinn was in possession of the farm by a tenant. When Smith & Tobey took the mortgage, they knew of the previous ownership of the farm and store by complainant. They relied upon an abstract of the title from the records of Lenawee county, which showed title in Navin, and had no converse with McGinn about it.

The day Navin left the county he drew $750 from the bank, and about that time his mother deeded to Smith & Tobey a house and lot in Adrian, worth about $8,000, the title being in her, as further security for Navin's indebtedness to them. This lot was purchased by Navin, and he had nearly completed the house upon it, probably with his own means, or that of persons whom he had swindled. About a month thereafter, Smith & Tobey, for some reason, deeded these premises back to Mrs. Navin, the mother of Thomas J.

The counsel for defendant Tobey contend that the bank was innocent of any complicity in the fraud of Navin upon complainant by which the deed was obtained; that it invested its money in good faith upon the security of the mortgage, believing the title to the lands to be in Navin, as it so appeared from the records; and that, under the equitable rule that, when one of two innocent parties must suffer loss, the one must bear the loss who, by his careless or negligent conduct, has made it possible that either should suffer, the mortgage must be considered a valid and subsisting lien upon the premises, and the complainant's bill dismissed.

This was the view of the court below, from which the complainant appeals to this Court.

It is claimed by the counsel for complainant that the deed is a forgery, and can pass no title to the most innocent of purchasers or incumbrancers; that, if not technically a false instrument in such a sense as to come within the literal defi-

nition of forgery, it is yet the same as a forged deed in its effect; that it is absolutely void, and not voidable; that the deed was never delivered by McGinn, and that, without delivery, it is void from the beginning; that the complainant never intended to sign any such instrument,—his mind did not go with the act,—and that, therefore, in contemplation of the law, he never did sign it; that it is no more his deed than if he had signed it in his sleep.

It is very evident that the deed of these premises to Navin was not in fact the deed of the complainant. He never meant to execute a deed, and never knew that he had exe- cuted one until confronted with his signature to the same, after Navin had gone away to escape arrest. As was well said by Chief Justice Ryan, in *Griffiths v. Kellogg*, 39 Wis. 294, the deed, " if not a forgery, was akin to forgery." That was a case where a lightning-rod agent induced a woman to sign a promissory note for a greater sum than she owed, by reading the instrument to her as of the less and real sum of her agreed obligation. The court said: " The note in suit was as little hers as if the transaction between her and the lightning-rod man had not taken place and he had forged the note."

The person who relies upon the records for the authen- ticity and validity of a deed does not stand in as favorable a position as a good-faith holder of negotiable paper.

In this case, if the name of complainant had been forged by Navin, without the presence or knowledge of McGinn, and placed upon the record, the abstract of title upon which de- fendant Tobey and his copartner relied would not have dis- closed the forgery, any more than it did the fraud, of Navin. It seems to us that, in order to make them *bona fide* holders of this mortgage as against the lands of McGinn, they were bound to go further than the abstract, and to examine the deed. This they did not do.

But we consider this deed clearly a forgery, under the best definitions of that offense. Bishop defines " forgery" to be " the false making or materially altering, with intent to de- fraud, of any writing, which, if genuine, might apparently

be of legal efficacy, or the foundation of a legal liability :" 2
Bish. Crim. Law (7th ed.), § 523. It is the "fraudulent
making and alteration of a writing, to the prejudice of
another man's rights :" 4 Bl. Comm. 247. The signature
to this instrument is genuine, but the body of the deed is
false, and the signing of complainant's name, without knowl-
edge of such falsity, cannot cure it and make it a true and
valid instrument in the hands of any one. A genuine signa-
ture cannot change the character of an instrument of this
kind, unless the intent to do so goes with the signature.

It does not seem to me that the question of the complain-
ant's negligence in signing this supposed copy of the lease
without reading it, if this is a forgery, as I think it is, can
be considered in this case ; for, if the deed is in law a forg-
ery, the question of good faith cannot arise : *Camp v. Car-
penter*, 52 Mich. 375 ; *Austin v. Dean*, 40 Id. 386 ; *D' Wolf
v. Haydn*, 24 Ill. 525 ; *Griffiths v. Kellogg*, 39 Wis. 293 ;
*Crawford v. Hoeft*, 58 Mich. 21.

I do not think, either, that Smith & Tobey could be con-
sidered good-faith holders by a simple examination of the
abstract of title. The alteration in the date of the deed
would have appeared upon examination of the original docu-
ment, but was not shown by the registry. And the singular
circumstance of their deeding the house and lot back to Mrs.
Navin, and notifying the attorneys of complainant that they
were about to do so, and telling them that they did this so
that McGinn might attach Navin's interest in the same,
coupled with the fact that they knew of McGinn's occu-
pancy of the farm, and did not ask him about the pretended
transfer to Navin, and the further fact that they also knew that
the house built upon the lot deeded by Mrs. Navin to them
was paid for, in part, by funds of Navin, drawn out of their
own bank, leads me to strongly suspect, to say the least, their
entire good faith in the transaction. They are not innocent
parties without such fault, in my mind, as to take the value
of this mortgage out of this old man, when they could have
easily obtained its amount from Navin's property, which
they have voluntarily returned to his mother.

There is no gross negligence shown upon the part of complainant. McGinn was not bound to suppose that a man of the position and character in the community that Navin then held, and who was his professed friend, was likely to thus rob him of his hard earnings. He read the lease, and it was read to him. What must have been this deed was very similar to the lease. It was placed before him as a copy, and in signing it he only did what the ordinary business man, having any confidence in the honesty and integrity of another, would have done.

To require that he should have dealt with Navin upon the principle that "every man is a rascal," and none honest, or lose his property, would be to encourage in law a distrust and doubt of human nature not commendable or to be desired.

We think, under the circumstances, he had a right to put a little faith in the integrity of one honored and trusted by the community where he lived, and was not so negligent in signing the duplicate without reading it as to lose his rights in the premises against one holding on the faith of the record title, without notice of the fraudulent inception of the deed.

The decree of the court below is reversed, with costs of both courts, and a decree will be entered here granting the relief prayed in complainant's bill.

CAMPBELL, C. J., and CHAMPLIN, J., concurred. SHERWOOD, J., concurred in the result.