ALMA JACKSON v. DAVID A. LYNN AND J. S. RICH, Defendants. BARNEY GRIBBLE, Intervener. J. S. RICH, Appellant.

**Escrow:** DELIVERY. A deed placed in escrow, fraudulently taken from the depositary without performance of the conditions attached to its delivery is void in the hands of a good faith buyer; no estoppel based on the negligence of the one who signed the deed being pleaded.

**Practice:** TENDER. A put a deed to Iowa land in escrow. B, in exchange, deeds A Omaha property. The Iowa deed is placed in escrow, certain conditions are attached to its delivery, and the Omaha property is to be forfeited if such conditions are not complied with. B fraudulently abstracts the deed in escrow. *Held,* A may maintain an action *to cancel* the Iowa deed without tender of the Omaha land.

**Ratification.** A puts a deed to Iowa land in escrow, attaching certain conditions to its delivery. He also delivers a deed to Kansas land. B, in exchange, delivers a deed to Omaha property. B fraudulently takes the Iowa deed out of escrow and records it. Subsequently A records the deed to the Omaha property and goes into possession. *Held,* no ratification of the taking of the Iowa

deed, as A had the right by the contract of the parties and the deed delivered to him to take immediate possession of the Omaha property.

*Appeal from Decatur District Court.*—HON. W. H. TEDFORD, Judge.

THURSDAY, APRIL 4, 1895.

Suit in equity to set aside and cancel a deed for certain lands in Decatur county, and to quiet plaintiff's title in said property. From a decree for plaintiff, the defendant Rich appeals.—*Affirmed.*

*S. R. Anstine* and *M. F. Stookey* for appellant.

*E. W. Curry* for appellee.

Deemer, J.—In the month of July, 1890, the plaintiff, being the owner of the land in controversy, which is located in Decatur county, and also an "equity" in some Kansas lands, entered into negotiations with the defendant David A. Lynn, a resident of Omaha, for the exchange of these lands for a town lot in the city of Omaha, belonging to Lynn. The parties finally agreed upon the terms of an exchange and repaired to the office of an attorney named Ledwich, to have their agreement reduced to writing. This attorney made out a written contract between the parties which was signed by each of them, and which recited, in substance, that whereas Lynn had conveyed to the plaintiff the Omaha lot subject to a mortgage of four thousand dollars; and whereas there were mechanic's liens then filed against the property for seven hundred and eighty-four dollars and ninety-three cents, which, with any other liens that might be thereafter filed against the property for labor and material, Lynn agreed to pay, the seven hundred and eighty-four dollars and ninety-three

cents within thirty days, and any other liens as soon as filed; and whereas Lynn further agreed to build on said premises a barn to cost not less than seven hundred dollars, according to certain plans and specifications, the same to be built within forty-five days, and also agreed to pay and discharge a certain mortgage against the lot for one thousand and sixty dollars and another mechanic's lien for the sum of three hundred and twenty-nine dollars and eighty-four cents, with the interest accruing on each and all these amounts, and within five days to furnish an abstract of title showing perfect title to the lot in question in Lynn, free from all claims except the four thousand dollars and the mechanic's lien for seven hundred and eighty-four dollars and ninety-three cents; and whereas the said Alma Jackson has agreed to convey to Lynn the land in controversy in part consideration for the premises aforesaid: Therefore it is agreed that, to secure the payment of the mechanic's lien and the building of the barn by Lynn, that Jackson shall deposit the deed to the Decatur county land in escrow with James Ledwich, and the same to be delivered to Lynn upon the full performance by him of all the agreements on his part; and upon the failure of Lynn to perform his agreements within the time limited then the deed to the Iowa land was to be turned back to Jackson, and title thereto was to revert immediately to him. The building of the barn and the payment of the liens by Lynn were expressly made a part of the consideration for the Iowa land. Pursuant to this contract, plaintiff deeded to Lynn the Kansas land, and made out and deposited a deed for the Iowa lands with Ledwich, to be by him held in escrow in accordance with the terms of the contract, and Lynn executed and delivered to plaintiff a deed for the Omaha lots. Lynn did not, however, pay the liens upon the Omaha property, or any part thereof; nor has he ever complied

with the conditions of the contract, performance of which was necessary to entitle him to the deed for the Iowa land. A few days after the execution of the contract, and about the twenty-fifth day of July, plaintiff and Lynn went to the office of Ledwich to examine the plans and specifications for the barn, and while there, Lynn surreptitiously and fraudulently extracted the deed from the possession of Ledwich, without the consent of either plaintiff or Ledwich, and within the next day or two executed a deed for the premises to the defendant Rich, who was an employe in his (Lynn's) office, and Rich immediately sent this deed and the deed Lynn had abstracted from the custody of Ledwich to Decatur county, and had the same recorded. About the sixteenth day of August, 1890, plaintiff executed a deed for the premises to one Barney Gribble, but he claims, while this deed is absolute on its face, yet it was in fact intended as a mortgage to secure the sum of two thousand dollars borrowed from Gribble. On the twenty-first day of August, and a short time after he discovered that the deed to Lynn had been placed upon record, plaintiff commenced this suit to set aside the deeds from himself to Lynn and from Lynn to Rich, and to have the deed to Gribble declared a mortgage. Service was had by publication, and a default was taken, and decree rendered as prayed, in November, 1890. In August, 1892, defendant Rich appeared, had the default set aside, and filed an answer and cross petition and Gribble filed a petition of intervention, claiming absolute title to the premises. The court below, after hearing the testimony, granted to plaintiff the relief demanded, and continued the case as to the issue presented by Gribble's petition of intervention. Defendant Rich appeals.

I. It clearly appears from the foregoing statement of facts that the deed from plaintiff to Lynn is of

no validity, because it was never delivered, but, on the contrary, was fraudulently abstracted from the possession of the depositary, Ledwich, and is therefore void, not only as to Lynn, but also as to Rich, unless there is something in the defense interposed, which will save the title to him. *Golden v. Hardesty,* 93 Iowa, 622, 61 N. W. Rep. 913; *Patton v. Cook,* 83 Iowa, 71; 1 Devlin Deeds, sections 267, 268; *Everts v. Agnes,* 4 Wis. 343; *Tisher v. Beckwith,* 30 Wis. 57; *Haven v. Kramer,* 41 Iowa, 382. The two defenses pleaded by Rich which we will notice are: *First,* that he purchased the land in controversy from his codefendant Lynn on or about July 25, 1890, for a valuable consideration, and in good faith, without notice or knowledge of any equity, right, or title claimed by the plaintiff therein; and, *second,* that plaintiff, on the nineteenth day of August, 1890, and after learning that the deed to Lynn had been recorded, recorded the deed he received from Lynn for the Omaha property, and went into possession of the premises, and continued to use and occupy the same as owner up to the present time.

As to the first defense, it is sufficient to say that if the deed was fraudulently and wrongfully obtained from Ledwich, as charged, it will no more pass title to the supposed grantee, Lynn, than if it were a forgery, and will not transfer title to subsequent purchasers without notice. *Tisher v. Beckwith,* and *Everts v. Agnes, supra.* The grantor in such a case may have been so negligent, or his carelessness and inattention to the rights of others may have been so marked, that the law will estop him from claiming title as against a bona fide purchaser for value. But where such negligence or carelessness or inattention, either before or after delivery of deed, is relied upon as an estoppel, it must be pleaded as such before the subsequent grantee can rely thereon. *Golden v. Hardesty,*

*supra.* In this case no estoppel was pleaded, so we have no occasion to consider whether defendant Rich was a bona fide purchaser or not.

It is next insisted that plaintiff ratified, or at least acquiesced in, the delivery of the deed to Lynn, by taking possession of the Omaha property, and occupying and using the same as owner. That one can ratify and confirm a deed surreptitiously obtained must be conceded. And the question here is, did plaintiff so ratify and confirm the deed to Lynn by recording the deed to the Omaha property, and taking possession of the lot, as that he is bound thereby? To determine this we must look to the nature of the action, the contract, and the surrounding circumstances. We have seen that at the time the contract was made plaintiff deeded to the defendant Lynn, by absolute deed, the Kansas land, which, it is true, was of but little value; and received from Lynn a deed for the Omaha property, which he was at liberty, under the terms of the contract to place on record at any time. This Omaha property, as it stood, was of little value, because of the incumbrances placed upon it. It became valuable because of Lynn's promise to remove incumbrances against it, amounting to more than two thousand one hundred dollars, and to build a barn costing not less than seven hundred dollars; and the deed to the Iowa land was made out and deposited in escrow, to be delivered when Lynn removed these incumbrances, built the barn, and furnished an abstract of title as stated. The contract expressly provided that, unless these things were done within the times named for their performance, the deed to the Iowa land was to be "turned back" to plaintiff, and the title to the land was to immediately reinvest in him. That we may better understand the contract and conduct of the parties, it should be stated that the value of the Iowa land,

over and above the incumbrances against it, was about the amount of the incumbrances against the Omaha lot and the seven hundred dollar barn which Lynn was to erect.  Now, it quite clearly appears that the plaintiff had the right under the contract to take possession of the Omaha property, and record the deed thereto at any time, without in any manner waiving the performance of the contract by Lynn.  Lynn received a deed to the Kansas land, and went into the possession thereof immediately, but the deed to the Iowa land was not to be delivered until Lynn paid off the incumbrances, and built the barn as agreed; and, if this was not done, then the deed was to be returned to plaintiff and title was to reinvest in him.  We do not see how the recording of the Omaha deed, and the taking possession of the property by plaintiff, can be considered a ratification of Lynn's wrongful act in surreptitiously taking the deed from the custody of the depositary.

It is also said in argument that plaintiff cannot maintain this suit without tendering back a deed to the Omaha property, and accounting for the rents received.  It will be observed that this is not an action to rescind the contract entered into between the parties for fraud, in which event plaintiff would be compelled to make tender back of all he had received; but that it is an action to set aside a stolen deed, in which plaintiff is insisting upon the letter of his contract.  There is nothing for him to tender back.  Defendant has forfeited all his rights to the deed by failing to perform the conditions which entitle him to it, and under the express terms of the contract plaintiff is entitled to the land in controversy, and to the return of the deed, without tendering back anything.  The deed to the Omaha property was absolute, and plaintiff's rights therein were not to be affected by any failure of defendant Lynn to perform

the conditions which entitled him to the deed for the Iowa land. The Omaha lots were forfeited to plaintiff by the very terms of the contract, or, if not so forfeited, plaintiff was not, under the circumstances, required to tender them back before enforcing his remedy to cancel the deed which had been fraudulently and wrongfully obtained.

We have not considered the question as to whether Rich was an innocent purchaser, because we do not deem it necessary to determine it. If it were material to a proper decision of the case, we would be in grave doubt whether he had established his claim or not. As the court below did not consider the petition of intervention of Gribble, but continued the case as to him, we have no occasion to further refer to the issue presented thereby. A careful perusal of the whole record leads us to the conclusion that the decree of the district court is right, and it is *affirmed*.