**Paul LANGE and Guelda S. Lange, husband and wife, Appellants (Plaintiffs),**

v.

**The WYOMING NATIONAL BANK OF CASPER, a national banking institution, Appellee (Defendant).**

**Fireside Partners, a Wyoming General Partnership; Milton M. Coffman, Jr.; Rocky Mountain Title Insurance Agency, a Wyoming corporation; Lawyer's Title Company, a Virginia corporation; Lower & Company, a Wyoming corporation, (Defendants),**

**Freden-Lower Partnership, (Intervenor).**

**No. 85–25.**

Supreme Court of Wyoming.

Sept. 13, 1985.

Rehearing Denied Dec. 20, 1985.

Don W. Riske, Riske, Edmonds & Darrow, P.C., Cheyenne, for appellants (plaintiffs).

W. Thomas Sullins II, Brown, Drew, Apostolos, Massey & Sullivan, Casper for appellee (defendant) Wyo. Nat. Bank of Casper.

Jerry A. Yaap, Bishop, Bishop & Yaap, Casper, for defendant Lawyer's Title Ins. Co.

Before THOMAS, C.J., ROONEY, BROWN and CARDINE, JJ., and WOLFE, District Judge.*

WOLFE, District Judge.

On March 13, 1980, the appellants Paul and Guelda Lange (sellers) and Fireside Partners (buyers) entered into a contract for the purchase of certain real and personal property located in Casper, Wyoming. The subject of the contract included the Fireside Lounge, City of Casper Liquor License Number 17, four apartment units and commercial buildings located at 1845, 1847, 1849, 1855 and 1875 CY Avenue in Casper.

The contract provided for placement of several warranty deeds in escrow with the appellee Wyoming National Bank of Casper. Such deeds were to have been released to Fireside Partners periodically as installment payments were made. Fireside Partners was able to make all of the installment payments up to July 1, 1982. The problems giving rise to this case resulted from Fireside Partners' inability to make the July 1, 1982, payment.

On July 31, 1982, the appellants provided notice pursuant to the terms of the contract that if the July 1 payment was not made in full on or before the thirtieth day from the date of said notice, the contract would terminate.

In an attempt to make payment, Milton M. Coffman, Jr., as managing partner of Fireside Partners, sought a loan from appellee Wyoming National Bank of Casper. Coffman represented to the bank that upon making the July 1 installment payment Fireside Partners would receive fee title to the entire parcel upon which the Fireside Lounge building was located (also known as the Schedule C property). This would enable Fireside Partners to offer the parcel as security for the loan it was seeking.

However, the description on the warranty deeds held in escrow to be released when the July 1 payment was made specifi-

cally did not include the entire parcel upon which the Fireside Lounge building was located. Therefore, Coffman commissioned the preparation of a new legal description which encompassed the entire parcel of real property and then obtained a title insurance policy based on the expanded legal description. The title insurance policy was issued by Rocky Mountain Title Insurance Agency (hereinafter RMTIA), which Coffman managed, and was underwritten by Lawyer's Title Insurance Company (hereinafter LTIC). Additionally, Coffman drafted an Affidavit of Lien Release allegedly obtained from Lower & Company for construction work they had performed on the Fireside Lounge building.

At the closing of the loan transaction, Coffman demanded and received a deed from the escrow agent at appellee bank. He then proceeded to remove the original legal description from the deed and substitute the expanded description purporting to convey the entire parcel, on which set the Fireside Lounge building, to Fireside Partners. Based upon the altered deed, the Affidavit of Lien Release and the title insurance commitment, appellee bank issued a loan to Coffman and placed a mortgage on the property described in the expanded legal description. Fireside Partners then made the July 1, 1982, installment payment from the proceeds of the bank loan.

After August 1982, Fireside Partners defaulted on the contract for deed. Appellants thereafter declared a default in the contract, retained all payments and exercised their right to the return of property not already released.

On April 21, 1983, appellants filed a complaint asking the court to quiet title in them the original Schedule C property and to declare the mortgage obtained by Coffman against the Schedule C property to be null and void. The complaint also alleged various compensatory and punitive dam-

* ROSE, Justice, having recused himself, Wolfe, District Judge, was assigned pursuant to order of the court entered April 12, 1985.

ages against Milton M. Coffman, Jr., RMTIA, LTIC and Lower & Company.

Summary judgment was granted to Lower & Company as to the damage claim brought against them by the appellants. At trial it was made known that Coffman and Fireside Partners had filed for bankruptcy and that RMTIA was insolvent; therefore, neither would be appearing or defending at the trial. The court subsequently ordered a default against Coffman and RMTIA and excused them from appearing. The parties remaining to participate at trial were appellee Wyoming National Bank, appellee Lawyer's Title Insurance Company and appellant Lange.

The amount of the mortgage was $1,481,-000.00. $290,000.00 of that amount went to the appellants for the July 1, 1982, payment, and the remainder ($1,191,000.00) represented previous debts Coffman had incurred with appellee bank. The district court reformed the description on the mortgage so that it encumbered the original Schedule C property. The court then quieted title in appellants that portion of property unlawfully conveyed by Fireside Partners. Title to the original Schedule C property was also quieted in appellants subject to the $1,481,000.00 mortgage of the appellee bank. Additionally, the court denied any liability of appellee LTIC to the appellants.

Appellants put forth the following issues for consideration:

"I. Whether the court erred in not declaring the Wyoming National Bank/Fireside Partners mortgage invalid.

"II. Whether the court erred by ordering that the Wyoming National Bank/Fireside Partners mortgage be reformed to encumber only those lands described in the warranty deed originally placed in escrow.

"III. Whether the court erred in dismissing the appellants' claims against appellee Lawyers' Title Insurance Company."

We will affirm in part and reverse in part.

### I

The major issue in this case is whether or not the mortgage set up between Coffman and appellee bank is valid. The appellants contend it is not, and we agree.

There is no dispute in this case that Coffman altered the deed to the Schedule C property. The alteration made it appear to the appellee bank that Coffman would receive title to the entire parcel on which the Fireside Lounge was situated as soon as the July 1, 1982, payment was made. Relying on that fact, the appellee bank issued a loan to Coffman and accepted a mortgage on the Schedule C property as security. Clearly, Coffman obtained the mortgage by fraudulent misrepresentation.

Appellants correctly rely on the general rule stated in *Otero v. Albuquerque,* 22 N.M. 128, 158 P. 793 (1916), and restated in *Mosley v. Magnolia Petroleum Co.,* 45 N.M. 230, 114 P.2d 740, 748 (1941):

" * * * A deed purloined or stolen from the grantor, or possession of which was fraudulently or wrongfully obtained from him without his knowledge, consent, or acquiescence, is no more effectual to pass title to the supposed grantee than if it were a total forgery, and an instrument of the latter kind had been spread upon the record." [1]

■ Therefore, a deed fraudulently altered is void. The appellee bank does not contest this point. As stated in their brief before this court:

---

1. See also *Balfour v. Hopkins,* 35 C.C.A. 445, 93 F. 564 (C.C.A.Wash.1899); *Meley v. Collins,* 41 Cal. 663, 10 Am.Rep. 279 (1871); *Jackson v. Lynn,* 94 Iowa 151, 62 N.W. 704, 58 Am.St.Rep. 386 (1895); *Stone v. French,* 37 Kan. 145, 14 P. 530, 1 Am.St.Rep. 237 (1887); *McGinn v. Tobey,* 62 Mich. 252, 28 N.W. 818, 4 Am.St.Rep. 848 (1886); *Wiggenhorn v. Daniels,* 149 Mo. 160, 50 S.W. 807 (1899); *Scheer v. Stolz,* 41 N.M. 585, 72 P.2d 606 (1937); *Clevenger v. Moore,* 126 Okl. 246, 259 P. 219, 54 A.L.R. 1237 (1927); *Epps v. McCallum Realty Co.,* 139 S.C. 481, 138 S.E. 297 (1927); *Steffian v. Milmo National Bank,* 69 Tex. 513, 6 S.W. 823 (1888); *Houston Land & Trust Co. v. Hubbard,* 37 Tex.Civ.App. 546, 85 S.W. 474 (1905); *Spotts v. Whitaker,* Tex.Civ.App., 157 S.W. 422 (1913).

"* * * Appellee, the Wyoming National Bank of Casper, would agree that in this action grounds exist, under Wyoming law, for a court to cancel the Lange to Fireside Partners warranty deed which had been fraudulently altered. * * *"

The disagreement between the parties occurs over how this void deed affects the mortgage between Coffman (Fireside Partners) and appellee bank.

■ Appellants contend that a mortgagee (here appellee bank) who encumbers a wrongfully obtained title cannot be viewed as a good-faith encumbrancer; therefore, the mortgage should be declared void. However, one need not go so far in order to establish that the mortgage, in this case, is invalid. The mortgage between Coffman and appellee bank was based on a fraudulently altered deed. This fact, in and of itself, makes the mortgage a nullity regardless of whether the appellee bank made the loan in good faith. 12 A C.J.S. Cancellation of Instruments, § 37, p. 700, states:

"The general rules of rescission and cancellation for fraudulent inducement are applicable to commercial papers, leases, mortgages, releases and satisfaction pieces, exchanges, and other contracts and instruments."

The rule was applied in *Financial Credit Corporation v. Williams*, 246 Md. 575, 229 A.2d 712 (1967). In that case, the mortgagors used the proceeds of a loan to secure improvements on their home. However, the mortgagee misrepresented the sum of the mortgage to be $3,200 when, in fact, it was $6,399.60, and procured the mortgagor's signature without giving notice of any change. Although not aligned with the facts in the present case, *Financial Credit Corporation v. Williams*, supra, stands for the general proposition that a mortgage obtained by fraud is an absolute nullity as between the mortgagor and mortgagee. *Financial Credit Corporation v. Williams*, supra, 229 A.2d at 715.

It appears uncontradicted in this case by all of the parties that fraud was involved in obtaining the mortgage from appellee bank. In order for the loan to be approved, appellee bank required an Affidavit of Lien Release from Lower & Company, a title insurance policy and a deed reflecting the description of the property to be mortgaged. Subsequently, Coffman obtained an expanded legal description of the Schedule C property, a title insurance policy based on that expanded description, and then apparently forged an Affidavit of Lien Release. He later actually altered the original deed, held in escrow, to reflect the expanded description. After Coffman presented the Affidavit of Lien Release, title insurance policy and altered deed, the appellee bank issued a loan to Coffman and accepted a mortgage on the Schedule C property. Clearly, fraud had been committed. This fact, in and of itself, makes the mortgage a nullity.

■ Our conclusion is supported even further by the fact that the mortgage was based on a void deed. Appellee bank argues that the cancellation of the deed has no effect on the mortgage. This simply cannot be. "If the mortgagor's rights in the property continue, so do the rights of the mortgagee. If the mortgagor's rights in the land terminate, so do the mortgagee's." *Rush v. Anestos*, 104 Idaho 630, 661 P.2d 1229, 1234 (1983); *Kendrick v. Davis*, 75 Wash.2d 456, 452 P.2d 222 (1969). Coffman, as the mortgagor, lost any rights he may have had in the Schedule C property by altering the deed. This automatically made the deed a nullity in the hands of Coffman and eventually appellee bank. A mortgage based on such a void deed has no legal effect and is itself null and void.

■ The fact that Coffman fraudulently obtained the deed from the escrow agent takes this case outside the general rule that the alteration of a description of a deed after delivery does not void the deed as it existed at the time of delivery. 4 Am.Jur.2d, Alteration of Instructions, § 33, p. 32.

■ The district court reformed the mortgage so that the Schedule C property was encumbered in the amount of $1,481,-

000.00. This result contradicts our holding today in that one cannot reform an invalid mortgage. Apparently the district court is concerned that appellants will receive a windfall if the Schedule C property is returned, the mortgage held void and the July 1 payment retained.

■ However, had Coffman not made the July 1 payment by August 29, the appellants could have exercised their right to a return of the Schedule C property free of all encumbrances and at the same time retained all payments made prior to July 1982. These conditions were agreed to by Coffman (Fireside Partners) and appellants in the contract for deed. By invalidating the subject mortgage, we are merely holding that the parties should be brought back to the position they were in prior to the events which led to this lawsuit. The only windfall appellants could receive is in being allowed to retain the July 1 payment. · Consequently, the appellants are directed to return to appellee bank the July 1 payment in the amount of $290,000.00, which they have already agreed to do.

## II & III

We do not reach the issues of whether the district court erred in reforming the mortgage between Coffman and appellee bank or in denying appellants' damages claims against LTIC. Appellants in their notice of appeal limited themselves to one issue; that of the district court's refusal to cancel the mortgage between Coffman and appellee bank. Therefore, we refuse to consider any issues not previously raised by appellants in their notice of appeal.

We hold that the district court erred in not declaring the Coffman (Fireside Partners) and appellee bank mortgage invalid. The mortgage is void by virtue of the fact that it was based on an invalid deed. In so much that appellants have benefited from the void mortgage, they are directed to return to the appellee bank the July 1, 1982, payment ($290,000.00) made by Coffman on the Schedule C property.

Affirmed in part and reversed in part.

ROONEY, Justice, concurring in part and dissenting in part.

I concur with that said in the majority opinion except for the direction to appellants to pay to appellee bank the July 1, 1982 payment made by Coffman and Fireside Partners. Appellants were not parties to the transaction by which the appellee bank loaned money to the other defendants. Appellants should not be required at their peril to inquire into the source of money used to pay an installment on an obligation owed to them. Illustration: X sells an automobile to Y with payment to be made on installments. X need not inquire, when each payment is made, whether or not Y obtained the money through fraud, theft, etc. I cannot agree with the setting of such a precedent. There is no proper legal theory by which appellants are made insurers of appellee bank's loan.

To label the payment made to appellants by defendants other than appellee bank as a "windfall" is an improper, indirect attack on the liquidated damage provision of the agreement between appellants and the other defendants. Appellee bank was not "unjustly" enriched.

> "The mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi contract, unjust enrichment, or restitution. * * *" 66 Am. Jur.2d Restitution and Implied Contracts, § 16, p. 960 (1973).

See *Eightway Corporation v. Dime Savings Bank of Williamsburgh*, 94 Misc.2d 274, 404 N.Y.S.2d 302 (1978); *McGrath v. Hilding*, 41 N.Y.2d 625, 394 N.Y.S.2d 603, 363 N.E.2d 328 (1977); *Haggard Drilling, Inc. v. Greene*, 195 Neb. 136, 236 N.W.2d 841 (1975).

I would reverse in all respects.