Paul LANGE, Jr., as Personal Representative of the Estate of Paul Lange, deceased, Appellant (Plaintiff),

v.

LAWYER'S TITLE COMPANY, a Virginia corporation, Appellee (Defendant).

LAWYER'S TITLE COMPANY, a Virginia corporation, Appellant (Defendant),

v.

Paul LANGE, Jr., as Personal Representative of the Estate of Paul Lange, deceased, Appellee (Plaintiff).

Nos. 87–17, 87–18.

Supreme Court of Wyoming.

Aug. 18, 1987.

Don W. Riske, Cheyenne, for Paul Lange, Jr., as Personal Representative of the Estate of Paul Lange, deceased.

Marvin L. Bishop, III, of Bishop, Bishop & Yaap, Casper, for Lawyer's Title Co., a Va. Corp.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This appeal arises from the entry of summary judgment in favor of Lawyer's Title Company on the allegations contained in the complaint of Paul Lange, Jr., as personal representative of the estate of Paul Lange, deceased, and in favor of Lange on the allegations contained in the counterclaim of Lawyer's Title.

We affirm.

We previously considered this dispute when we were asked to decide the validity of a mortgage. The controversy involved a sale of property by contract for deed which was executed in 1980 by Paul Lange and Guelda S. Lange as sellers and Fireside Partners as buyer. The contract provided that the Langes would place several warranty deeds in escrow with Wyoming National Bank of Casper, and the deeds would be released to Fireside Partners as the periodic installment payments were made. Under the terms of the contract, the property which was to be released after the July 1, 1982, payment was only a portion of the land occupied by the Fireside Lounge building. The parties also stipulated that the contract was specifically designed to prevent Fireside Partners from encumbering the Fireside Lounge building until the July 1984 payment was made.

Fireside Partners made the payments in a timely fashion until July 1, 1982. When the Langes did not receive that payment, they notified Fireside Partners in accordance with the contract terms that, if the payment was not made within 30 days, the contract would be terminated. Milton M. Coffman, Jr., as managing partner of Fireside Partners, then sought a loan from Wyoming National Bank of Casper, the bank holding the warranty deeds, in order to make the payment. He represented to the bank that, upon payment of the July 1 installment, Fireside Partners would receive fee title to the entire parcel occupied by the Fireside Lounge building and, therefore, would be able to offer the parcel as security for the loan. The bank approved the loan, Fireside Partners made the July 1 payment, and the bank released one of the warranty deeds to Fireside Partners pursuant to the terms of the contract for deed. Upon receipt of the warranty deed, Coffman removed the original legal description contained therein and substituted an expanded description which purported to convey the entire parcel in conformity with his earlier representation to the bank. Relying upon the altered deed and Coffman's misrepresentation, the bank accepted from Fireside Partners a mortgage on the entire parcel as security for the loan.

Fireside Partners subsequently defaulted on the contract for deed. As a result, the Langes declared Fireside Partners in default, retained all payments, and exercised their right to retain all the property not already released. In 1983, the Langes brought an action seeking a declaration that the mortgage given by Fireside Partners to the bank was null and void. The district court reformed the legal description on the mortgage so that it encumbered only the property originally described in the warranty deed. The district court also quieted title to the property in the Langes subject to the mortgage.

The Langes appealed to this Court, and we reversed the district court's judgment to the extent that it upheld the mortgage. *Lange v. Wyoming National Bank of Casper*, Wyo., 706 P.2d 659 (1985). We held that, because the bank relied on the fraudulently altered deed when it accepted the mortgage from Fireside Partners, the mortgage was null and void. In order to prevent the Langes from receiving a "windfall," they were directed to return the July 1, 1982, payment to the bank. The Langes filed an application for rehearing, which was denied by this Court on December 20, 1985. In support of their application, the Langes stated in pertinent part:

> "[The] Bank should not be entitled to return of the July, 1982, payment as [it] did not make such payment, [was] under no obligation to make a payment, and had no contractual relationship with [the Langes] as to such payment. The payment was made by Fireside Partners and any return of such payment to Fireside Partners by [the Langes] should be subject to those offsets as may be established * * * in [the Langes]."

After the denial of the application for rehearing, the Langes paid to the bank the amount of the July 1 payment.

The appeal presently before this Court arises from the facts set forth above in addition to the following facts. In September 1982, Lawyer's Title issued a title insurance policy to the bank insuring the bank against any loss which might result from the invalidity or unenforceability of the lien created by the mortgage executed by Fireside Partners. After the Langes paid the amount of the July 1, 1982, payment to the bank, they notified Lawyer's Title that they were subrogated to the rights of the bank to the extent of their payment to the bank, and they demanded payment in that amount. Lawyer's Title denied the Langes' claim. Subsequently, Lawyer's Title paid the bank the difference between the bank's claim and the amount paid by the Langes. Thus, the bank received a portion of the amount insured under the policy from Lawyer's Title and a portion from the Langes.

CASE NO. 87–17

On August 1, 1986, Paul Lange, Jr., as personal representative of the estate of Paul Lange, deceased, filed a complaint in district court alleging that the Langes were subrogated to the rights of the bank to claim under the title insurance policy by virtue of their payment to the bank of a portion of the amount insured. The district court entered summary judgment in favor of Lawyer's Title on the complaint.

Lange presents the following issues for our review:

1. "WHETHER [THE LANGES], UPON PAYMENT OF TWO HUNDRED NINETY THOUSAND DOLLARS ($290,-000.00) TO WYOMING NATIONAL BANK OF CASPER, NOW KNOWN AS NORWEST BANK CASPER, N.A. AS REQUIRED BY THE MANDATE OF THE WYOMING SUPREME COURT ISSUED IN *LANGE V. WYOMING NATIONAL BANK OF CASPER*, 706 P.2d 659 (Wyo.1985), BECAME SUBROGATED TO THE BANK'S CLAIM AGAINST LAWYER'S TITLE."

2. "WHETHER, GIVEN THE UNDISPUTED FACTS OF THE INSTANT CASE, THOSE AFFIRMATIVE DEFENSES RAISED BY APPELLEE IN THE ACTION BELOW, PRECLUDE AN ORDER OF THE WYOMING SUPREME COURT DIRECTING THE DISTRICT COURT TO ENTER JUDGMENT IN FAVOR OF [THE LANGES]."

Lange appeals the summary judgment which denies his claim to subrogation. A right to subrogation which does not arise from a contract between the parties is known as "legal subrogation." *Commercial Union Insurance Company v. Postin,* Wyo., 610 P.2d 984, 986 n. 2 (1980). Legal subrogation is an equitable doctrine and will be used only to further an equitable result. *Wyoming Building & Loan Ass'n v. Mills Const. Co.,* 38 Wyo. 515, 269 P. 45, 60 A.L.R. 418 (1928). "Moreover, the equity of the party seeking subrogation must be strong and his rights clear." 73 Am. Jur.2d, Subrogation § 14 at 608 (1974).

Lange is attempting to use an equitable doctrine to reverse what this Court previously did in equity. We determined in *Lange v. Wyoming National Bank of Casper,* 706 P.2d at 663, that allowing the Langes to keep the July 1982 payment and the property would be a windfall. We further held on the application for rehearing that the Langes were not entitled to subject the payment to an evidentiary hearing on consequential damages. Lange is now attempting to use an equitable doctrine to give him the windfall which was denied the Langes in *Lange v. Wyoming National Bank of Casper.* Clearly, that cannot be done. The equitable balance was struck in that previous case, and we will not rearrange it now.

> "We have repeated the general standards governing appellate review of summary judgments countless times. *Rompf v. John Q. Hammons Hotels, Inc.,* Wyo., 685 P.2d 25 (1984); *Schepps v. Howe,* Wyo., 665 P.2d 504 (1983). We see no reason to reiterate all of them again in this opinion." *Conway v. Guernsey Cable TV,* Wyo., 713 P.2d 786, 788 (1986).
>
> "The only conflict was with respect to the legal conclusion which should be drawn from undisputed facts, and the summary judgment was appropriate." *Curutchet v. Bordarrampe,* Wyo., 726 P.2d 500, 505 (1986).

### CASE NO. 87–18

On August 21, 1986, Lawyer's Title filed an answer to Lange's complaint and a counterclaim alleging that Lange had filed a baseless complaint pursuant to § 1–14–128, W.S.1977, and consequently that Lawyer's Title was entitled to damages, including attorney's fees, court costs, and expenses. The district court entered summary judgment in favor of Lange on this counterclaim.

Lawyer's Title presents the following issues:

"A. Whether the Trial Court erred in granting [Lange's] Motion for Summary Judgment as to [Lawyer's Title's] Counterclaim alleging [Lange's] Complaint is a baseless pleading as defined in Section 1–14–128, W.S.1977.

"B. Whether after reasonable inquiry [Lange's] Complaint is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

"C. Whether [Lange's] civil action against [Lawyer's Title] was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"D. Whether [Lawyer's Title] is entitled to reasonable expenses, attorney's fees and costs incurred by [Lawyer's Title] because of the filing of a civil action by [Lange].

"E. Whether there is reasonable cause for the appeal by [Lange] in the Supreme Court of Wyoming and if no reasonable cause exists then whether [Lawyer's Title] is entitled to a reasonable fee to counsel for [Lawyer's Title] and damages from [Lange] to be fixed by the Court pursuant to Rule 10.05, Wyoming Rules of Appellate Procedure for [Lange] filing a frivolous appeal * * * in the Supreme Court of Wyoming."

Lawyer's Title asserts that Lange's claim to subrogation is not "well grounded in fact [or] warranted by the existing [law]" and that it does not constitute a good faith argument for the extension, modification, or reversal of existing law and, consequently, that it was interposed for an improper purpose.

In his complaint, Lange sets forth generally accepted rules of law regarding equitable subrogation and applies basically undisputed facts. Lange's contention is that the equities between himself and Lawyer's Title are different than the equities between himself and the bank. Although Lange's complaint lacks merit in that, under either comparison, the retention of the payment would be a windfall to Lange, the complaint cannot be said to be baseless or to have been filed in bad faith or for an improper purpose. Under the circumstances of this case, the trial court correctly found that there was no issue of material fact and that Lange was entitled to summary judgment as a matter of law.

█ The final issue we address is whether Lange's appeal is frivolous. Rule 10.05, W.R.A.P., provides a reasonable fee to be assessed "[i]f the court certifies that there was no reasonable cause for the appeal." We decline to award fees under the circumstances of this case.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

In *Lange v. Wyoming National Bank of Casper,* Wyo., 706 P.2d 659 (1985) (Fireside Lounge I), this court by a split decision determined that a real estate contract seller would be ordered to refund a payment obtained from the buyer with funds obtained by the buyer in using a forged deed to mortgage the contracted premises. Another default and subsequent litigation later developed. Labeling the funds a windfall, in blithe disregard of the ingenuity of buyer, the court's conclusion then made

was at best judicial adventurism, as taking money owed to and received by the seller to pay an obligation of a title insurance company which had insured merchantable title for the loan as consequently liable for the bank's loss sustained from the forged deed. The principal of the corporate buyer was in the title insurance business, and had written the title insurance as an agent for the present appellee, Lawyer's Title Company.

I would perceive that any justification for the court in appellate first-time factual conclusion to apply the characterization of windfall to the installment contract as then in a delinquent state, lacked procedural merit and legal precedent. See *Marcam Mortgage Corporation v. Black,* Wyo., 686 P.2d 575 (1984).[1] It cannot be denied that this court, in disregard of pleading and briefing status in Fireside Lounge I, required plaintiffs to pay a debt which, under the title insurance policy, was owed to the lender by appellee Lawyer's Title Insurance as forgery coverage in title guarantee.

More to the point, whether Fireside Lounge I (as then determined by this court and denied upon petition for rehearing) was right, wrong, or indifferent, with the decision made, I now fail to conclude that this court needs to make a second mistake in denial of a classical subrogation right and repayment remedy in this case (Fireside Lounge II). When under the imperium of order by this court plaintiffs paid $290,000 to a lender, as a part of a debt owed by the buyer and guaranteed by the title insurance carrier, this court should have known then and should effectuate now what was

---

**1.** The colloquial conclusion was derived from a reference in appellant Lange's brief in that case, that if the forged deed was voided, they should refund the monies received to *Fireside Partners, the buyer,* and concurrently receive an offset *for losses sustained* which would generally occasion a retention damage when expedited default had not then been pursued. A review of all briefs in Fireside Lounge I reveals no consideration by any of the participants that Lange might be obligated to refund money to the lender who had made the loan to the defaulting buyer. The contested payment in the amount of $290,000

was only a part of the entire loan amount of $1,481,000 included by Fireside in the loan transaction provided by the lender in acceptance of the mortgage secured on the forged title as part security. Best characterized at the stage reached in Fireside Lounge I, the payment occurred at a "give me money or I retake the property" time, whereafter in provocative financing the buyer did pay and did retain, and then later this court assessed a price in voiding a forged deed, to require repayment of the previous payment upon subsequent delinquency.

created as a legal subrogation right for reimbursement.

Classical texts, cases, and this court have defined "subrogation" in its conventional station:

"The substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. *Home Owners' Loan Corp. v. Baker*, 299 Mass. 158, 12 N.E.2d 199, 201 [1938]; *Gerken v. Davidson Grocery Co.*, 57 Idaho 670, 69 P.2d 122, 126 [1937]." Black's Law Dictionary (5th ed.).

*Commercial Union Insurance Company v. Postin*, Wyo., 610 P.2d 984 (1980); Stearns Law of Suretyship, § 7.1 (5th ed.) at 200. See also Arant on Suretyship § 79, The Surety's Right of Subrogation (1931). The Wyoming Supreme Court, having found in Fireside Lounge I that Lange should pay what constituted a contractual debt of Lawyer's Title, should now reassess that first liability against Lawyer's Title, in consonance with the theory of subrogation said to have first arisen under early Roman law.

In my opinion, two wrongs do not make the present result right.

I find the thoughtful analysis and informed persuasion of *Wyoming Building & Loan Association v. Mills Construction Co.*, 38 Wyo. 515, 269 P. 45 (1928) to be applicable. Substituting title for lien, I find the rule there stated here specifically applies:

"The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity, and is given when other-

wise there would be a manifest failure of justice. This is legal subrogation. It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it, though it is not exercised in favor of a mere intermeddler. This principle, adopted from the Roman law and at first sparingly exercised, has come to be one of the great principles of equity of our jurisprudence, and courts incline to extend it rather than restrict it. [Citations.] One instance in which legal subrogation is applied is in connection with the protection of a lien, and the rule is universal that one who has an interest in property by lien or otherwise, in making payment of prior liens, including taxes, is not a mere volunteer, and that he will be entitled, upon payment of a superior lien in order to protect his own lien, to be subrogated to the rights of the superior lienholder." 269 P. at 48–49.

Obviously, in result, but for these separate reasons, I concur with the court on appeal by the title insurance company as a malicious-prosecution counterclaim proceeding. I do not, however, conclude that § 1–14–128, W.S.1977, 1987 Cum.Supp., or Rule 11, W.R.C.P., as rewritten by this court effective April 21, 1987, have served to supersede the procedural jurisdictional character of malicious prosecution as clearly established in *Durante v. Consumers Filling Station Company of Cheyenne*, 71 Wyo. 271, 257 P.2d 347 (1953), and since uniformly followed.

I would reverse and remand for decision on plaintiff's right to legal subrogation on the claim that Wyoming National Bank had against Lawyer's Title under the forged deed, for which a reduced obligation to Lawyer's Title of $290,000 was created by order of this court.[2] We should accord legal subrogation to Lange in resulting cir-

---

**2.** Obviously, if this court had not added the unsolicited last paragraph in the opinion in Fireside I, establishing the $290,000 payment requirement from contract-seller to buyer's financing bank, then the title insurance company would have retained its accrued liability for the forged deed in total, and, if paid, then it would have reciprocally achieved a subrogation right against the borrower, Fireside Partners, and its title insurance representatives, Rocky Mountain Title and Milton M. Coffman, Jr. As it was, the title insurance company paid $192,660 rather than the ascertainable policy loss of $482,660, for which difference this court's prior opinion shifted payment responsibility.

cumstance as standing in the shoes of the lender to enforce the mortgage insurance policy for repayment to them of the $290,000 which they paid under order of this court to the Wyoming National Bank.